UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
AMERICAN MANUFACTURERS MUTUAL
INSURANCE COMPANY and AMERICAN
MOTORISTS INSURANCE COMPANY,

                              Plaintiffs,                        CV-05-5155 (SJF)

    -against-

                                                     **OPINION & ORDER**

PAYTON LANE NURSING HOME, INC., and
PERKINS EASTMAN ARCHITECTS, P.C.,

                              Defendants.
----------------------------------------------------------X

FEUERSTEIN, J.

Plaintiffs American Manufacturers Mutual Insurance Company ("AMMIC") and American Motorists Insurance Company ("AMIC") (collectively, the "Sureties") commenced this action against Payton Lane Nursing Home, Inc. ("Payton Lane") and Perkins Eastman Architects, P.C. ("Perkins") (collectively, "defendants") seeking damages for, *inter alia*, breach of contract and negligent misrepresentation. Defendants now separately move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint. For the reasons stated herein, Payton Lane's motion is denied and Perkins's motion is granted in part and denied in part.

I.    Background

    A.    Factual Allegations

The action arises out of the construction of a seven hundred (700) room, two hundred-eighty (280) bed nursing home in Southampton, Suffolk County, New York known as the Payton

1

Lane Nursing Home (the "Project"). (See Complaint, dated Nov. 3, 2005 ["Compl."], ¶ 7). On November 16, 2001, IDI Construction Company ("IDI"), as contractor, entered into a contract with Payton Lane, as owner, for construction of the Project at a contract price of $29,717,385 (the "Construction Contract"). (Id. ¶ 8). Prior to hiring IDI, Payton Lane and Perkins entered into a contract (the "Architectural Contract"), pursuant to which Perkins agreed, *inter alia*, to prepare the design and construction documents for the Project, to assist Payton Lane in obtaining bids and awarding contracts for construction of the Project, to administer the Construction Contract, to "endeavor to guard [Payton Lane] against defects and deficiencies in the Work of the Contractor," and to determine the amounts owing to the Contractor. (Architectural Contract Art. 1)[1]. The Architectural Contract specifically provided that although Perkins was to visit the site as appropriate "to become generally familiar with the progress and quality of the Work and to determine in general if the Work [was] proceeding in accordance with the Contract Documents," but it was not required "to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work." (Id. at 1.4.4).

On December 3, 2001, the Sureties issued a performance bond on behalf of IDI, as principal, in favor of Payton Lane and the U.S. Department of Housing and Urban Development ("HUD"), as dual obligees, in the penal sum of $29,717,385. (Compl. ¶ 9). On December 13, 2001, PFC Corporation ("PFC") issued a mortgage loan in the amount of $37,523,000 to Payton Lane, guaranteed by HUD, which included an allocation of $29,717,385 to be paid to IDI in

---

[1] Although not attached to the complaint, the complaint repeatedly refers to the Takeover Agreement and to the Architectural Contract, and relies heavily upon the terms and effect thereof. (See Compl. ¶¶ 14-17, 77-78, 91-92). Accordingly, the Architectural Contract and Takeover Agreement may properly be considered on these motions to dismiss. See Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006).

accordance with the provisions of the Construction Contract and in accordance with HUD's payment processing requirements and PFC's disbursement requirements. (Id. ¶ 10).

After IDI commenced work under the Construction Contract, disputes arose between it and Payton Lane concerning performance of their respective obligations under the Construction Contract. (Compl. ¶¶ 11, 12). On May 11, 2004, Payton Lane declared IDI in default under the Construction Contract and called upon the Sureties to satisfy their obligations under the performance bond. (Id. ¶ 13). According to the Sureties, Payton Lane and Perkins had maintained a log (the "Log") prior to the default. (Compl. ¶ 75). The Sureties allege that following IDI's default, and in response to their request, Payton Lane and Perkins provided the Log to them and represented that it identified all of the work performed by IDI which was not in compliance with the Construction Contract and which would have to be corrected. (Id. ¶ 76). According to the Sureties, they relied upon Perkins's representations concerning the Log and its certifications of payments to IDI to negotiate a written takeover agreement with Payton Lane on July 9, 2004 ("the Takeover Agreement"), which provided, *inter alia*, as follows: (1) that the Sureties would complete the work on the Project, as defined therein; (2) that the Construction Contract price would be adjusted to $30,317,327, and that the then current unpaid balance of $7,400,972, including retainage of $2,458,216, would be paid to the Sureties; (3) that the Sureties would be paid for any additional or extra work, as defined therein; (4) that the Sureties would pay Payton Lane $4.25 million in consideration for, among other things, Payton Lane releasing the Sureties from all claims that it then had against them, except for latent construction defects, and assigning all of its rights against IDI to them; (5) that Payton Lane represented that it knew of no "condition or requirement that would be an impediment to completion and approval by HUD of

3

the Project, except as disclosed [therein];" and (6) that the Sureties reserved all claims against "Payton Lane's professionals," arising from, *inter alia*, design defects that may arise or become known after the date of the Takeover Agreement. (Id. ¶¶ 14, 15, 17). The Log was attached to the Takeover Agreement. (Id. ¶¶ 16, 77).

The Sureties further allege that prior to their execution of the Takeover Agreement, Perkins certified that IDI had performed over 83% of the base contract work in accordance with the Construction Contract totaling $24,782,156 of work, of which sum Payton Lane paid $22,323,940 to IDI and held $2,458,216 in retainage. (Compl. ¶¶ 85, 93). The Sureties allege that after they executed the Takeover Agreement, they determined that IDI had only completed approximately 58% of the base contract work in accordance with the Construction Contract, or a total of $17,236,083 of work, of which only $15,512,475 should have been paid. (Id. ¶¶ 86, 94).

On August 20, 2004, the Sureties and E.W. Howell Co. Inc. ("Howell") entered into a completion contract, pursuant to which Howell was to complete the remaining work on the Project ("the Completion Contract"). (Compl. ¶ 18). After commencing performance, Howell allegedly discovered substantial items of work performed by IDI which were not in accordance with the Construction Contract and which required corrective work beyond the scope of the work contemplated under the Completion Contract. (Id. ¶ 19). The Sureties allege that Payton Lane and Perkins knew or should have known of the need for the corrective work, but failed to identify it in the Log or to disclose it to the Sureties prior to their execution of the Takeover Agreement. (Id. ¶¶ 20, 21). Howell performed the necessary corrective work, for which the Sureties paid it approximately $2.3 million dollars. (Id. ¶ 22). Despite due demand, Payton Lane failed to reimburse the Sureties for any of the corrective work. (Id. ¶¶ 23-25).

In addition to the corrective work, the Sureties performed work beyond the scope of the Takeover Agreement and Construction Contract which was "specifically directed by Payton Lane pursuant to Construction Change Directives issued by its Architect Perkins," required by design changes made by Perkins, or considered essential to completion of the Project. (Compl. ¶ 26; pgs. 8-10 [Extra Work costs]). Payton Lane failed to seek or obtain the requisite approvals from HUD and PFC and has refused to pay for any of the additional work, which the Sureties allege totals more than $1.25 million dollars. (Id. ¶¶ 27-33).

The Sureties further allege that Payton Lane failed to perform work which it agreed to perform, such as installing entrance way canopies, constructing driveways and installing irrigation systems, and has failed to make decisions and provide timely direction with respect to many items of the additional and corrective work, which has added extra cost and expense to the work performed by the Sureties. (Compl. ¶¶ 34-35).

On August 12, 2005, five months after the completion date set forth in the Takeover Agreement, the Sureties allegedly achieved "Substantial Completion" of the remaining work, and, pursuant to the Construction Contract, so advised Payton Lane. (Compl. ¶¶ 36-37). On October 10, 2005, the Sureties further advised Payton Lane that, among other things, the remaining work would be completed by October 14, 2005, but that the Sureties would continue to perform punchlist work thereafter. (Id. ¶ 39). On October 14, 2005, Payton Lane advised the Sureties of its intention to terminate the Construction Contract on the grounds that the Sureties had "abandoned" the Project and that there was still work unperformed by the Sureties. (Id. ¶ 40). The Sureties allege that despite due demand, Payton Lane has failed and refused to pay any portion of the funds due them and that, as a result, they have no obligation to continue work on

the Project, notwithstanding that only a few minor punchlist items of work remain to be completed. (Id. ¶¶ 43-45). According to the Sureties, the facilities are now occupied and Payton Lane is fully operational, except for various items of work for which Payton Lane is solely responsible. (Id. ¶ 46). According to Payton Lane, the nursing home stands vacant because of construction delays that have now lasted over two-and-a-half (2 ½) years. (Payton Lane's Memorandum of Law In Support of Its Motion to Dismiss, dated Nov. 23, 2005 ["Payton Mem."], at 1).

B. Procedural Background

The Sureties commenced this action against Payton Lane seeking damages for breach of contract (First and Fifth Claims); quantum meruit (Second Claim); unjust enrichment (Third Claim); delay (Fourth Claim); negligent misrepresentation (Sixth Claim) and overpayment to IDI (Seventh Claim), and against Perkins for negligent misrepresentation (Sixth Claim) and overpayment to IDI (Seventh Claim) and, as subrogee for Payton Lane, for breach of contract (Eighth Claim).

Payton Lane now moves to dismiss the action as against it on the ground that the Sureties have failed to follow mandatory contractual dispute resolution procedures, or in the alternative, to stay this action pending completion of any such proceedings. Perkins separately moves to dismiss the action as against it on the grounds: (1) that the Sureties cannot state a claim for negligence against it because there is no privity of contract, or functional equivalent of privity, between it and them and, thus, it owed no duty of care to them; (2) that the complaint fails to state a claim for overpayment to IDI because it fails to set forth any damages resulting therefrom;

(3) that since Payton Lane agreed not to assign or transfer any of its contractual rights under the Architectural Contract, the Sureties fail to state a claim for breach of contract as against it; and (4) that the Sureties have no right to subrogation because they voluntarily assumed their obligations under the Takeover Agreement and because they issued an express warranty that they were familiar with the conditions of the Project at the time of the takeover.

II. Discussion

    A. Standard

        1. Standard of Review

A motion to dismiss for failure to state a claim under Rule 12(b)(6) should be granted only where "it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Levitt v. Bear Stearns & Co., 340 F.3d 94, 101 (2d Cir. 2003)(internal quotations and citations omitted). In deciding a motion to dismiss, the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. See, Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 44 (2d Cir. 2003). The court's task "is merely to assess the legal feasability of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Levitt, 340 F.3d at 101 (internal quotations and citations omitted). The issue is not whether a plaintiff will ultimately prevail but whether he or she is entitled to offer evidence to support the claims. See, Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995). The Court must limit itself to the facts alleged in the complaint, to any documents attached to the complaint as exhibits or incorporated by reference therein, to matters of which judicial notice may be taken,

or to documents within plaintiff's possession or of which plaintiffs had knowledge and relied upon in bringing suit. See, Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993).

> B. Payton Lane's Motion
>
> 1. Condition Precedent

To state a claim for breach of contract under New York law[2], the complaint must allege (1) the existence of an agreement; (2) that the plaintiff has adequately performed his or her obligations under the agreement; (3) that the defendant failed to perform his or her obligations thereunder; and (4) damages resulting to the plaintiff from the defendant's nonperformance. See, 24/7 Records, Inc. v. Sony Music Entertainment, Inc., 429 F.3d 39, 41-42 (2d Cir. 2005); Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 177 (2d Cir. 2004).

Rule 9(c) of the Federal Rules of Civil Procedure provides as follows:

> "In pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred. A denial of performance or occurrence shall be made specifically and with particularity."

A general averment of performance of a condition precedent is sufficient to withstand a motion to dismiss. See, e.g. Ackerley Media Group, Inc. v. Sharp Electronics Corp., 170 F.Supp.2d 445, 453 (S.D.N.Y. 2001).

---

[2] The parties appear to agree that New York law applies in this case.

Payton Lane contends that the dispute resolution procedures provided by the Construction Contract, which mandate that all disputes first be submitted in writing to the architect, are conditions precedent to the commencement of any litigation by IDI and that the Sureties, having assumed the obligations of IDI pursuant to the Takeover Agreement, were likewise bound by those conditions precedent. However, the complaint states that "[a]ll conditions precedent, if any, to the commencement of this action have been satisfied or excused" and "all work which the Sureties agreed to perform has been completed." (Compl. ¶¶ 45, 47). Notwithstanding Payton Lane's conclusory contentions to the contrary, those allegations are sufficient to defeat a motion to dismiss at the pleadings stage.

2. Staying the Litigation[3]

Payton Lane requests a stay of this action pending a decision by the architect pursuant to the contractual dispute resolution procedures or pending the completion of the Project and the opening of the nursing home on the grounds that the Sureties will not be prejudiced and the interests of judicial economy would be served thereby.

"The district court has broad discretion to stay proceedings as an incident to its power to control its own docket." Clinton v. Jones, 520 U.S. 681, 706, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997); see also WorldCrisa Corp. v. Armstrong, 129 F.3d 71, 76 (2d Cir. 1997)(recognizing that district courts, whether or not the FAA is applicable, may stay a case pursuant to the power

---

[3] Neither party has addressed the applicability or inapplicability of Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3, ("the FAA") but rather proceed solely on the basis of the court's inherent authority to grant a stay. Accordingly, I will not address the applicability of the FAA to this action, particularly since the Sureties and Perkins were not parties to the original Construction Contract containing the alternative dispute resolution procedures.

inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel and for litigants). The movant "bears the burden of establishing its need" for a stay. Clinton, 520 U.S. at 708, 117 S.Ct. 1636. The factors considered in deciding whether to grant a stay were summarized in Kappel v. Comfort as follows:

> (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.

914 F.Supp. 1056, 1058 (S.D.N.Y. 1996) (quoting Volmar Distributors v. New York Post Co., Inc., 152 F.R.D. 36, 39 (S.D.N.Y. 1993)). Courts are generally reluctant to stay proceedings out of concern for a plaintiff's right to proceed with its case. LaSala v. Needham & Co., Inc., 399 F.Supp.2d 421, 427 (S.D.N.Y. 2005).

Payton Lane has not satisfied its burden of establishing the need for a stay of this action, particularly since it has not shown that alternative dispute resolution is currently proceeding. Accordingly, Payton Lane's request for a stay is denied.

### C. Perkins's Motion

#### 1. Privity and Duty of Care

In their Sixth and Seventh claims, the Sureties seek damages from Perkins based upon its alleged negligent misrepresentations regarding the Log and its negligent certifications leading to

a $6,811,465 overpayment to IDI. (Id. at 7)[4]. According to the New York Court of Appeals, "recovery may be had for pecuniary loss arising from negligent representations where there is actual privity of contract between the parties or a relationship so close as to approach that of privity." Ossining Union Free School Dist. v. Anderson LaRocca Anderson, 73 N.Y.2d 417, 424, 541 N.Y.S.2d 335, 539 N.E.2d 91 (1989). See also Prudential Ins. Co. of America v. Dewey, Ballantine, Bushby, Palmer & Wood, 80 N.Y.2d 377, 382, 590 N.Y.S.2d 831, 605 N.E.2d 318 (1992) ("[B]efore a party may recover in tort for pecuniary loss sustained as a result of another's negligent misrepresentation, there must be a showing that there was either actual privity of contract between the parties or a relationship so close as to approach that of privity."). It is undisputed that no actual privity of contract exists between the Sureties or their principal, IDI, and Perkins. Accordingly, in order to prevail on their causes of action for negligent misrepresentation and overpayment to IDI against Perkins, the Sureties must demonstrate that IDI's relationship with Perkins "approaches that of privity."

A defendant can be held in constructive privity for negligent misrepresentation only if the plaintiff shows: "(1) awareness that the reports were to be used for a particular purpose or purposes; (2) reliance by a known party or parties in furtherance of that purpose; and (3) some conduct by the defendants linking them to the party or parties and evincing defendant's understanding of their reliance." Ossining, 73 N.Y.2d at 425, 541 N.Y.S.2d at 339 (citing Credit Alliance Corp. v. Arthur Andersen & Co., 65 N.Y.2d 536, 551, 493 N.Y.S.2d 435, 443, 483 N.E.2d 110 (1985)). The duty of parties in constructive privity is narrowly construed. Ossining,

---

[4] Since the Sureties' remaining claim against Perkins is brought as subrogee of Payton Lane, which had a contract with Perkins, there is no requirement to show "functional privity" with respect to that claim.

73 N.Y.2d at 424, 541 N.Y.S.2d 335.

The Sureties' allegations fail to sustain a claim for negligent misrepresentation against Perkins as a matter of law. In those New York Court of Appeals cases in which constructive privity was found to exist, the defendants were retained for the specific purpose of making representations to the plaintiffs for them to rely upon before consummating a transaction with the retaining party. See, e.g. Prudential Ins. Co., 80 N.Y.2d at 385, 590 N.Y.S.2d 831 (finding a duty of care where the defendants were aware that "the end and aim" of their representations was to provide information the plaintiff required; the plaintiff's receipt of the information was a condition precedent to closing the transaction; and the information was sent directly to the plaintiff by the defendants); Ossining, 73 N.Y. 2d at 425, 541 N.Y.S.2d 335 (finding a duty of care where the plaintiff's reliance on the defendants' reports was the very purpose of the defendants' engagement); Credit Alliance, 65 N.Y.2d 536, 493 N.Y.S.2d 435 (1985)(finding all of the criteria for imposing a duty in light of allegations that the defendant was aware that providing its information to the plaintiff was a primary "end and aim" of its conduct); Glanzer v. Shepard, 233 N.Y. 236, 238-239, 135 N.E. 275 (1922)(finding a duty notwithstanding the absence of privity because the reliance on the defendant's misrepresentations was "the end and aim of the transaction," and the misrepresentations were made "for the very purpose of inducing action" by the plaintiff). Perkins was retained by Payton Lane, prior even to Payton Lane's retention of IDI, to prepare the design and construction documents for the Project, to assist Payton Lane in obtaining bids and awarding contracts for construction of the Project, to administer the Construction Contract, to "endeavor to guard [Payton Lane] against defects and deficiencies in the Work of the Contractor," and to determine the amounts owing to the

Contractor. (Architectural Contract Art. 1). Although the complaint alleges that Perkins was aware that the Sureties would rely on the Log and its certifications of payments to IDI in negotiating and entering into the Takeover Agreement, it is clear that Perkins was not retained for the particular purpose of providing a log of non-conforming work and that the Sureties claimed reliance was not "the end and aim" or the particular purpose of Perkins's retention by Payton Lane. See, e.g. Security Pacific Business Credit, Inc. v. Peat Marwick Main & Co., 79 N.Y.2d 695, 705-706, 586 N.Y.S.2d 87, 597 N.E.2d 1080 (1992) (finding the allegations insufficient as a matter of law where there was no evidence that the defendant had been retained for the specific purpose of inducing the plaintiff to act; specifically agreed to prepare the information for the plaintiff's use; shaped its opinion to meet the needs of the plaintiff or directly supplied its information to the plaintiff)[5]. See also Williams and Sons Erectors, Inc. v. South Carolina Steel Corp., 983 F.2d 1176, 1183 (2d Cir. 1993) (applying New York law and finding that the general contractor's allegations against the architect retained to provide preconstruction architectural services and to prepare contract documents to be distributed to prospective bidders, were insufficient as a matter of law); Mergentime/White v. Metcalf & Eddy of New York, Inc., No. 89 Civ. 7188, 1993 WL 72902, at * 5 (S.D.N.Y. Mar. 11, 1993) (holding that a contractor cannot sue architects for negligent preparation of designs and specifications created for the property

---

[5] To the extent that Travelers Cas. & Sur. Co. ex rel. Reliance Ins. Co. v. Dormitory Authority of State of New York, No. 04 Civ. 5101, 2005 WL 1177715 (S.D.N.Y. May 19, 2005), ECOR Solutions, Inc. v. Malcolm Pirnie, Inc., No. 1:02CV01103, 2005 WL 1843253 (N.D.N.Y. Jul. 29, 2005); any New York case from a lower court, see, e.g. Marcellus Construction Co., Inc. v. Village of Broadalbin, 302 A.D.2d 640, 755 N.Y.S.2d 474 (3rd Dept. 2003); or any other case from a different jurisdiction, is inconsistent, I am not bound by those cases and decline to follow them. Notably, the Sureties have not cited, and I have not found, any New York Court of Appeals case to the contrary.

owner prior to the contractors successful construction bid). The mere forseeability of the Sureties' use of the Log and certifications of requisitions, even if such information was directly provided to them by Perkins, cannot support a claim of negligent misrepresentation as a matter of law. Security Pacific, 79 N.Y.2d at 708. Accordingly, the Sureties' Sixth and Seventh claims against Perkins are dismissed.[6]

2. The "No-Assignment" Clause

Perkins alleges, without any legal support, that the Sureties' breach of contract claim against it should be dismissed because Payton Lane expressly agreed not to assign or transfer any of its rights under the Architectural Contract without Perkins's written consent, which had not been provided. (Architectural Contract, ¶ 8.3). However, the Sureties seek recovery for breach of contract as a subrogee of Payton Lane. As a result of the alleged losses sustained by the Sureties in discharging their performance bond obligations to Payton Lane, the Sureties became subrogated to the rights of their obligee, Payton Lane, against third parties, including Perkins, by operation of law. See, e.g. Chemical Bank v. Meltzer, 93 N.Y.2d 296, 304, 690 N.Y.S.2d 489, 712 N.E.2d 656 (1999) (holding that a surety's right of subrogation attaches at the time the surety pledges its obligation to the creditor); 83 C.J.S. Subrogation § 86 (2006) (stating that generally, a surety for a construction contractor compelled to make good the default of its principal acquires an interest in unpaid sums under the contract by subrogation to the rights of, *inter alia*, the principal or owner and will also be subrogated to other rights of, *inter alia*, the principal or

---

[6] In light of this determination, it is unnecessary to consider the branch of Perkins's motion which seeks dismissal of the Seventh claim for a failure to allege damages.

14

owner). Subrogation is an equitable doctrine, the purpose of which "is to afford a person who pays a debt that is owed primarily by someone else every opportunity to be reimbursed in full." Chemical Bank, 93 N.Y.2d at 304, 690 N.Y.S.2d 489.

Contrary to Perkins's contention, "[s]ubrogation is not a transfer of a cause of action." Liberty Mut. Fire Ins. Co. v. Perricone, 54 A.D.2d 975, 388 N.Y.S.2d 670 (1st Dept. 1976); see also 83 C.J.S. Subrogation § 86 (2006) (stating that a surety's interest, acquired by subrogation to the rights of the principal or owner, is acquired independently of assignment). Accordingly, this branch of Perkins's motion is denied as being entirely without merit.

3. Warranty

Perkins alleges that the Takeover Agreement specifically provides, *inter alia*, that "the Sureties represent and warrant that they have * * * been to the job site, familiarized themselves with the conditions of the site, and agree that the remaining work as defined in Exhibit A [of the Takeover Agreement] will be performed in accordance with the terms of the [Construction] Contract and this Agreement." (Takeover Agreement, ¶ 4). According to Perkins, in light of that warranty and the Sureties' involvement with the Project for months prior to the execution of the Takeover Agreement, the Sureties cannot establish that they relied upon any representations made by it in agreeing to the terms of the Takeover Agreement. However, the Takeover Agreement also expressly provides, *inter alia*, that "Payton Lane, by its architect, Perkins * * *, and IDI previously submitted documents outlining the status of the work remaining on the [Construction] Contract, inclusive of known remedial work, and the Sureties, by its consultant, GREYHAWK [North America, LLC], reviewed [those] submissions and prepared the Remaining

15

Scope of Work document attached [thereto] as Exhibit A." (Id. at p. 3). Moreover, the complaint alleges that Perkins provided the Log and represented that it identified all non-conforming work requiring correction and that the Sureties relied thereupon in agreeing to the work to be performed pursuant to the Takeover Agreement (Compl., ¶¶ 13, 75-80, 85-86), which allegations are deemed to be true for purposes of this motion to dismiss. Accordingly, Perkins's contention is without merit.

4.  The Sureties were "Volunteers"

Perkins alleges that the Sureties, "in agreeing to the terms of the Takeover Agreement, did so on its own volition and as a 'volunteer,'" and, thus, is not entitled to the right of subrogation. (Perkins' Mem. at 22). According to Perkins, as a surety, the Sureties were obligated to meet their obligations of their performance bond and the failures of their principal (IDI), but were under no obligation to pay for the alleged failure and mistakes of their obligee (Payton Lane) or their obligee's consultant (Perkins). According to Perkins, the Sureties had no right to subrogation or recoupment of any amounts paid stemming from obligations voluntarily undertaken. (Id. at 23). In addition, Perkins contends that the Sureties were not obligated to accept the representations of their obligee's consultant (Perkins) in entering into the Takeover Agreement.

While Perkins is correct that under New York law, a mere volunteer is not entitled to subrogation, see Perlmutter v. Timely Toys, Inc., 8 A.D.2d 834, 190 N.Y.S. 107, 109 (2d Dept. 1959), a party who discharges another's obligation under compulsion or who acts to protect his own rights and interests is not considered a "volunteer." See Junior Gallery, Ltd. v. Neptune

Orient Line, Ltd., No. 94 Civ. 4518, 1997 WL 26293, at * 3 (S.D.N.Y. Jan. 22, 1997); National R.R. Passenger Corp. v. New York Cent. Mut. Fire Ins. Co., No. 89 Civ. 272, 1991 WL 51128, at * 3 (S.D.N.Y. Apr. 2, 1991). Moreover, a payment by a surety is not voluntary as long as the obligation is enforceable. 72 C.J.S. Principal and Surety § 264 (2007). The payment of a claim presented by its obligee is sufficient to entitle a surety to subrogation if it is made in good faith and because of the surety's supposed liability on its undertaking. See 63 N.Y.Jur.2d Guaranty and Suretyship § 455 (2006)

It is undisputed that the Sureties' obligations under the performance bond were enforceable and that the Sureties are entitled to reimbursement for their payment of claims for which their principal, IDI, was liable. When the Sureties were called upon by Payton Lane, their obligee, to assume their obligations under the performance bond after the default of their principal, IDI, they did so by negotiating and executing the Takeover Agreement, relying, at least in part, on the Log and Perkins's certifications of payments. The Takeover Agreement expressly provides that by executing the Agreement, the Sureties were "not assuming any obligations or liabilities beyond those set forth in the [performance] Bonds." (Takeover Agreement, ¶ 3). When the Sureties became aware of the actual extent of the non-conforming work which was not included in the Log, they performed the additional work deemed essential to completing the Project in conformance with the Construction Contract and Takeover Agreement. Accordingly, contrary to Perkins's contention, the Sureties' were discharging their obligations under the performance bond and were not acting as "volunteers." Notably, Perkins does not allege that the Sureties acted in bad faith in discharging its obligations to Payton Lane. Accordingly, this branch of Perkins's motion is denied.

III. Conclusion

For the reasons stated herein, Payton Lane's motion to dismiss is denied in its entirety and Perkins's motion to dismiss is granted to the extent that the Sureties' Sixth and Seventh claims against it are dismissed, and Perkins's motion is otherwise denied.

SO ORDERED

_____
SANDRA J. FEUERSTEIN
United States District Judge

Dated: Central Islip, N.Y.
February 28, 2007

Copies to:

Steven H. Rittmaster
Torre, Lentz, Gamell, Gary & Rittmaster, LLP
100 Jericho Quadrangle
Suite 309
Jericho, NY 11753-2702

James Irving McClammy
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY 10017

Stephen P. Schreckinger
Gogick, Byrne & O'Neill, LLP
11 Broadway
New York, NY 10004