**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
AMERICAN MANUFACTURERS MUTUAL
INSURANCE COMPANY, et al.,

                        Plaintiffs,

        - against -

PAYTON LANE NURSING HOME, INC.,
et al.

                        Defendants.
-----------------------------------------------------------X

**ORDER**

CV 05-5155 (SJF) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.    PRELIMINARY STATEMENT**

Before the Court is Defendant Payton Lane Nursing Home Inc.'s ("Payton Lane") motion to compel [DE 96] Plaintiffs American Manufacturers Mutual Insurance Company and American Motorists Insurance Company (collectively, "Plaintiffs") to produce certain email and hard copy communications (the "Documents"). Payton Lane contends that Plaintiffs have improperly withheld these Documents from production of the grounds of attorney-client privilege. It appears that the Documents at issue all involve communications exchanged between representatives of non-party Greyhawk, N.A. ("Greyhawk") and counsel for Plaintiffs. In opposition, Plaintiffs argue that they have properly withheld approximately 2,400 emails and 80 hard copy communications because they are protected by the attorney-client privilege [DE 98].

For the reasons set forth below, the Court finds that communications between non-party Greyhawk and Plaintiffs' counsel may properly be analyzed for the existence of the attorney-client privilege. However, the Court finds that the privilege log submitted by Plaintiffs does not comply with the Federal Rules of Civil Procedure. Plaintiffs are directed to produce and serve a

revised privilege log, in accordance with the rulings and principles outlined below, no later than December 31, 2008.

## II. LEGAL STANDARD

A motion to compel is entrusted to the sound discretion of the district court. *Am. Sav. Bank, FSB v. UBS Paine Webber, Inc. (In re Fitch, Inc.)*, 330 F.3d 104, 108 (2d Cir. 2003); *United States v. Sanders*, 211 F.3d 711, 720 (2d Cir. 2000). The Second Circuit has noted that a "trial court enjoys wide discretion in its handling of pre-trial discovery, and its rulings with regard to discovery are reversed only upon a clear showing of an abuse of discretion." *DG Creditor Corp. v. Dabah (In re DG Acquisition Corp.)*, 151 F.3d 75, 79 (2d Cir. 1998) (citing *Cruden v. Bank of New York*, 957 F.2d 961, 972 (2d Cir. 1992)). A district court is considered to have abused its discretion only "if it bases its ruling on a mistaken application of the law or a clearly erroneous finding of fact." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001).

## III. DISCUSSION

### A. **Availability of the Attorney-Client Privilege**

Where, as here, the Court has diversity jurisdiction over a matter, "state law provides the rule of decision concerning the claim of attorney-client privilege." *Allied Irish Banks, P.L.C. v. Bank of Am., N.A.*, No. 03 Civ. 3728, 2008 WL 783544, at *3 (S.D.N.Y. Mar. 26, 2008) (citing Fed. R. Evid. 501; *Dixon v. 80 Pine St. Corp.*, 516 F.2d 1278, 1290 (2d Cir. 1975)). Under New York's Civil Practice Law and Rules ("CPLR"), the attorney-client privilege protects "confidential communication[s] made between attorney and client in the course of professional employment." NY CPLR § 4503(a). "In order for a communication to be privileged under New

2

York law, it must, among other things have been made principally to assist in obtaining or providing legal advice or services for the client." *Ross v. UKI Ltd.*, NO. 02 Civ. 9297, 2004 WL 67221, at *2 (S.D.N.Y. Jan. 15, 2004) (citing *People v. Osario*, 549 N.E.2d 1183 (1989)).

The issue before the Court in this instance is whether the Documents are entitled to the protection of the attorney-client privilege when they involve communications made between representatives of non-party Greyhawk and Plaintiffs' counsel. Plaintiffs argue that they retained Greyhawk to act as their agent and as their "'eyes and ears'" on the construction project at issue. Plaintiffs contend that Greyhawk acted on Plaintiffs' behalf "and always held itself out as the [Plaintiffs'] agent." According to Plaintiffs, Greyhawk's involvement "was necessary and indispensable given that the [Plaintiffs] had no onsite presence and no in-house construction expertise." DE 98 at 1. Payton Lane argues that Greyhawk simply provided "construction management services" to Plaintiffs as an independent contractor and that the services Greyhawk provided to Plaintiff were identical to the services Greyhawk has provided on thousands of other projects. DE 96 at 2.

Both parties focus their arguments on the legal principles set forth by the Eighth Circuit in *In re Bieter Co.*, 16 F.3d 929 (8th Cir. 1994).[1] The question before the court in *Bieter* was whether communications between a party and a non-party consultant were entitled to the protections of the attorney-client privilege. Ultimately, the court held that the application of the

---

[1] The Court has found only one New York state case applying the legal principles set forth in *Bieter*. *See Sieger v. Zak*, No. 19978/05, 2008 WL 598344, at *9 (Sup. Ct., Nassau Cty. Feb. 21, 2008). While Payton Lane correctly notes that two courts within the Second Circuit found it unnecessary to pass on the validity of *Bieter*'s ruling, several other courts within the circuit have found occasion to adopt and rely on the holding in *Bieter*. Thus, without any other authority or argument to the contrary, the Court deems the holding in *Bieter* applicable here.

3

attorney-client privilege was warranted and the communications were protected "because the consultant was involved in the activities which were the subject matter of the ensuing litigation and because the consultant possessed the information required by the attorney for informed advice." *In re Copper Market Antitrust Litig.*, 200 F.R.D. 213, 218 (S.D.N.Y. 2001) (summarizing the holding in *Bieter*).

The court in *In re Copper Market Antitrust Litigation* adopted the reasoning of the Eighth Circuit in *Bieter* as it analyzed whether to award attorney-client privilege protection to communications made between counsel for a party corporation and a non-party public relations consultant hired by the party corporation. *Id.* at 218-19. The court found that the non-party consultant "can fairly be equated with the [party corporation] for purposes of analyzing the availability of the attorney-client privilege" after an examination of the following factors: (1) the consultant was "essentially[ ] incorporated into [the party corporation's] staff to perform a [necessary] corporate function"; (2) the party corporation's resources were "insufficient to cover the task" that it hired the consultant to complete; (3) the consultant had authority to make decisions on behalf of the party corporation; (4) the communications made by the consultant on behalf of the party corporation had potential legal ramifications; and (5) the consultant, in formulating its communications, sought legal advice from the party corporation's counsel. *Id.* at 219. Because these factors were present, the court found that the non-party consultant was the "functional equivalent" of an employee of the party corporation. *Id.* at 221. As such, confidential communications made between the consultant and the party corporation or its counsel "that were made for the purpose of facilitating the rendition of legal services" were protected by the attorney-client privilege. *Id.* at 220.

Subsequently, the court in *Export-Import Bank of the United States v. Asia Pulp & Paper Co., Ltd.*, 232 F.R.D. 103 (S.D.N.Y. 2005),[2] applied the reasoning of the courts in *Bieter* and *In re Copper Market Antitrust Litigation*. In adopting that rationale, the court noted that "communications by a company's lawyers and its independent contractor merit protection if, by virtue of assuming the functions and duties of full-time employee, the contractor is a *defacto* employee of the company." *Id.* at 113. The court laid out the following factors to be considered when deciding whether an independent contractor was the "functional equivalent of an employee" within this framework: (1) "whether the consultant had primary responsibility for a key corporate job;" (2) "whether there was a continuous and close working relationship between the consultant and the company's principals on matters critical to the company's position in litigation;" and (3) "whether the consultant is likely to possess information possessed by no one else at the company." *Id.* The party asserting the privilege bears the burden to demonstrate that this "standard of integration" has been met. *Id.*

After reviewing the submission by Plaintiffs, the Court finds that Plaintiffs have met their burden to demonstrate that the factors set forth by the courts in *Bieter*, *In re Copper Market Antitrust Litigation*, and *Export-Import Bank* have been satisfied here. Plaintiffs did not have resources to oversee the day-to-day operations of the construction project as they had no on-site

---

[2] The Court does not agree with Plaintiffs' assertion that the court in *Export-Import Bank* applied a "heightened level of scrutiny" because the non-party at issue was a financial advisor, as opposed to another type of independent contractor. *See* DE 98 at 3. In dicta, the court noted its general use of caution when expanding the parameters of the attorney-client privilege and stated that "[c]aution is especially apt here because companies in financial crisis will often find it necessary to obtain the services of outside financial experts." *Export-Import Bank*, 232 F.R.D. at 114. The Court does not find that this language distinguishes *Export-Import Bank* from situations where, as here, the non-party consultant at issue is not a financial advisor.

representatives and no in-house construction experience. Plaintiffs have also demonstrated that Greyhawk had the authority to make decisions related to the construction project on Plaintiffs' behalf. Greyhawk's involvement (on Plaintiffs' behalf) in the negotiation of the various contracts with contractors and subcontractors had clear legal ramifications for Plaintiffs. Moreover, Greyhawk's services in connection with pursuing payment from Payton Lane, including articulating positions on behalf of Plaintiffs, required consultation with and the receipt of legal advice from Plaintiffs' counsel. Finally, because Greyhawk served as Plaintiffs' "eyes and ears" in connection with the day-to-day supervision of the construction project, Greyhawk representatives likely possessed information which was not possessed by anyone else employed by Plaintiffs.

Based on these considerations, the Court finds that Greyhawk "can fairly be equated" with Plaintiffs "for purposes of analyzing the availability of the attorney-client privilege" to protect from disclosure email communications between Greyhawk and Plaintiffs or their counsel. As discussed below, however, the privilege log produced by Plaintiffs does not provide sufficient information to allow the Court to make any determination whether the communications at issue were made in confidence and for the purpose of soliciting or receiving legal advice.

**B.** **The Privilege Log**

When a party withholds otherwise discoverable documents from production on the grounds that such documents are protected from disclosure by the attorney-client privilege, that party is required to:

> [D]escribe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that,

> without revealing information itself privileged or protected, will
> enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A)(ii). "At the very least, the party claiming the attorney-client privilege must give evidence that the document 'was created for the purpose of providing or obtaining legal rather than business advice.'" *Export-Import Bank*, 232 F.R.D. at 111 (quoting *NextG Networks of N.Y., Inc. v. City of New York*, No. 03 Civ. 9672, 2005 WL 857433, at *2 (S.D.N.Y. Apr. 13, 2005)) (collecting cases).

The 594-page privilege log provided by Plaintiffs to Payton Lane specifies the document type, document date, Bates numbers, author, and recipient(s) of each withheld Document. DE 96, Ex. A. The privilege log also contains a column titled "Document Title." These descriptions, however, are inappropriate and leave the Court "to guess at the nature of what is being withheld and why." *Export-Import Bank*, 232 F.R.D. at 111 (quoting *A.I.A. Holdings, S.A. v. Lehman Brothers, Inc.*, No. 97 Civ. 4978, 2002 WL 31385824, at *5 (S.D.N.Y. Oct. 21, 2002)). For example, many of the documents on page 72 are described in terms such as "RE: Invoice" and "before I forget." Multiple documents on page 75 are labeled "RE: Payton Lane."[3] These descriptions cannot possibly provide Payton Lane (or the Court) with sufficient information to analyze the validity of Plaintiffs' assertion of attorney-client privilege. Moreover, Plaintiffs appear to contend that given the nature of the relationship between Greyhawk and

---

[3] In opposition to Payton Lane's motion, Plaintiffs provided a 133-page document that apparently lists 2,400 emails and 80 hard copy documents "withheld solely based on attorney-client privilege." DE 98, Ex. 1. Plaintiffs reasoning for providing this chart is not clear to the Court – after all, some of the documents that appeared on the original privilege log but are absent from the revised chart were withheld on the basis of attorney-client privilege and/or work product privilege. In any event, the documents listed on the revised chart are described in the same deficient manner – each document is simply identified by "Doctitle," rather than with a description of the nature of the document.

Plaintiffs' counsel, as described above, the fact that the Documents were exchanged between Greyhawk and Plaintiffs' counsel automatically renders all of them subject to the attorney-client privilege. *See* DE 98 at 3. The Court rejects this argument. The Court finds dubious a claim that all of the items on the 594 page privilege log are actually privileged documents. It is axiomatic that not every communication between an attorney and client is automatically protected by the attorney-client privilege – there are several other well known requirements that must be met before such privilege will attach.

## IV.  CONCLUSION

Accordingly, Plaintiffs are directed to produce a revised privilege log that conforms with the requirements of the Federal Rules of Civil Procedure. In particular, for each document for which the attorney-client privilege is claimed, the privilege log must "identify each document with as much specificity as is needed to demonstrate that the communication was made for the purpose of obtaining or providing legal services and that the communication was intended to be and was kept confidential." *See Export-Import Bank*, 232 F.R.D. at 111.[4] Such revised privilege log must be produced to Payton Lane (and all other parties to whom the original was served) no later than December 31, 2008. The Court further expects Plaintiffs to cull out and produce all documents which, after further review, are not properly withheld on an assertion of attorney-client or work product privilege.

Once Plaintiffs serve the revised privilege log, Payton Lane will have fifteen (15) days to review the privilege log. At that time, if Payton Lane wishes to challenge Plaintiffs' claim of

---

[4] The same directive applies for each document withheld on the basis of work-product privilege or litigation preparation privilege.

attorney-client privilege for any withheld document, it may file an appropriate letter motion.

Such motion must be filed no later than January 30, 2009.

**SO ORDERED.**

Dated: Central Islip, New York
December 11, 2008

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge