**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
AMERICAN MANUFACTURERS MUTUAL
INSURANCE COMPANY and AMERICAN
MOTORISTS INSURANCE COMPANY

                  PlaintiffS

           - against -

PAYTON LANE NURSING HOME, INC.,
PERKINS EASTMAN ARCHITECTS, P.C.,
LINCOLN GENERAL INSURANCE COMPANY,
BENENSON PAYTON LANE PURCHASE LLC,
DAMON G. DOUGLAS COMPANY,
DIAM-N-BLU MECHANICAL CORP.,
INTERNATIONAL TESTING AND BALANCING,
LTD., and BRUCE A. PETERSON, INC.,

                Defendants.
----------------------------------------------------------------X
LINCOLN GENERAL INSURANCE COMPANY,

           Defendant/Third-Party Plaintiff

           - against -

SAM KLEIN,

              Third-Party Defendant.
----------------------------------------------------------------X

**REPORT AND RECOMMENDATION**

CV 05-5155 (SJF) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

      Plaintiffs American Manufacturers Mutual Insurance Company ("American

Manufacturers") and American Motorists Insurance Company ("American Motorists")

(collectively "Plaintiffs" or "Sureties") have moved for the entry of a default against Defendants

Benenson Payton Lane Purchase LLC ("Benenson"), Damon G. Douglas Company ("Douglas"),

Diam-N-Blu Mechanical Corp. ("Diam-N-Blu"), International Testing and Balancing, Ltd.,

("ITB") and Bruce A. Peterson ("Peterson"), pursuant to Fed. R. Civ. P. 55(a) for failure to plead or otherwise defend this action. See DE 88. Judge Feuerstein has referred this motion to me for a determination.

Plaintiffs brought this action for, among other things, breach of contract arising out of the construction of a 700-room, 280-bed nursing home in Southampton, New York. Am. Compl. ¶ 7. As the owner of the property, Defendant Payton Lane Nursing Home, Inc. ("Payton Lane") entered into a construction contract (the "Contract") with IDI Construction Company, Inc. ("IDI") for construction of the nursing home. *Id*. at ¶ 8. Plaintiffs acted as Sureties who issued a performance bond on behalf of IDI Construction Company, Inc. ("IDI"), as principal, in favor of Defendant Payton Lane Nursing Home and the United States Department of Housing and Urban Development ("HUD"), as dual obligees. *Id*. ¶ 9. According to Plaintiffs, during the course of construction, Defendant Payton Lane and IDI became involved in disputes concerning performance of their respective obligations under the Contract – disputes they were unable to resolve. *Id*. ¶ 12.

The Amended Complaint alleges that on May 11, 2004, Payton Lane declared IDI in default under the Contract and called upon the Plaintiffs/Sureties to satisfy their obligations under the performance bond. Id. 13. Two months later, the Sureties and Payton Lane entered into a written "Takeover Agreement" on July 9, 2004. In the Takeover Agreement,(the "Agreement"), Payton Lane and the Plaintiffs/Sureties agreed among things that (1) the Plaintiffs/Sureties would complete the work as defined by Exhibit A to the Takeover Agreement; (2) the adjusted Contract price, including change orders left a blance of $7,400,972 to be paid to the Sureties; (3) the Sureties would be paid for any extra work different from or in excess of, or

beyond the scope, of the work required by the Agreement; (4) simultaneous with the execution of the Takeover Agreement, the Sureties would pay Payton Lane $4.25 million in consideration for Payton Lane releasing the Sureties for all claims under the Bonds, except for latent defects, and Payton Lane assigning all of its rights against IDI to the Sureties; and (5) the Sureties waiving any right to any claim for additional time extensions and/or damages as a result of any delays which may have been caused by Payton Lane and/or its professionals. *Id*. ¶ 15.

Thereafter, the Plaintiffs/Sureties entered into a completion contract with E.W. Howell Co., Inc. ("Howell") for the remaining work. Id. ¶ 18. According to the Amended Complaint, after starting performance of the remaining work, Howell discovered substantial items of work performed or completed by IDI which were not in accord with the Contract and which would require corrective and related work beyond the scope of the remaining work set forth in the Agreement. Id. ¶ 19. Plaintiffs assert, on information and belief, that virtually all of the items of corrective work discovered by Howell were known or should have been known to Payton Lane and its architectural firm, Defendant Perkins Eastman Architects, P.C. ("Perkins"). Id. ¶ 20. Howell performed and was paid for the corrective work by the Sureties. The Sureties submitted change order requests to Payton Lane and Perkins, with the expectation that Perkins would approve the change orders and promptly reimburse the Sureties for the work. Id. ¶ 22. According to Plaintiffs, Perkins unjustifiably rejected the change orders and Payton Lane failed to reimburse them for any of the corrective work. Id. ¶¶ 23, 24.

In addition, the Sureties also performed "extra" work beyond the scope of the Agreement and the Contract and state that the work was (a) specifically directed by Payton Lane pursuant to Construction Change Directives issued by Perkins or (b) required due to design changes by

3

Perkins for which the Sureties submitted change order requests or (c) essential to completion of the project. Id. ¶ 26. The Contract required Payton Lane to obtain the prior written approval of HUD, among others, for the extra work. Plaintiffs assert on information and belief that Payton Lane failed either to seek or obtain that approval and proffer that it did not do so becuase such approval would have required Payton Lane to escrow funds with its lender, PFC Corporation to pay for the extra work. Id. ¶¶ 27-29. According to Plaintiffs, despite repeated demands, Payton Lane has failed to provide evidence of financial arrangements for payment of the extra work. Id. ¶31.

Despite this fact, the Sureties undertook and completed the extra work and claim entitlement to payment for their costs in performing the work delineated in the Amended Complaint. Id. ¶ 32. Plaintiffs assert that Payton Lane refused to pay for the extra work as well as the corrective work, failed to make decisions, and failed to provide essential direction for timely completion of the work, thus delaying the work and adding unnecessary cost. Id. ¶¶ 33-35. The Sureties nonetheless achieved "substantial completion" of the remaining work and advised Payton Lane that all of the work would be completed by October 14, 2005 – with the exception of some punchlist work which would continue to be performed after that date. Id. ¶¶ 36, 39. On October 14, 2005, Payton Lane advised the Sureties of Payton Lane's intention to terminate the Sureties under the Contract on the grounds that the Sureties had "abandoned" the project and that certain work which the Sureties were responsible to perform remained unperformed. Id. ¶ 40. The Sureties advised Payton Lane on October 21, 2005 that all of the work had been completed and there was no basis upon which to terminate the Sureties. They further informed Payton Lane that it was in material breach of the contract and agreement for

4

failure to pay Kemper contract funds, to obtain necessary approval and to fund the extra work, and to provide evidence that financial arrangements had been made to fulfill its obligations, among other things. Id. ¶¶ 41, 42. According to Plaintiffs, Payton Lane has failed and refused to pay what is due to Plaintiffs and, as a result of Payton Lane's material breaches, Plaintiffs are excused from further performance under the Contract or the agreement.

Based on all the foregoing allegations, Plaintiffs brought the following claims: (1) breach of contact against Payton Lane; (2) quantum meruit against Payton Lane; (3) unjust enrichment against Payton Lane; (4) delay against Payton Lane; (5) breach of contract for wrongful termination against Payton Lane; (6) negligent misrepresentation against Payton Lane and Perkins; (7) overpayment to IDI against Payton Lane and Perkins; (8) against Perkins as subrogee for Perkins' breach of contract; (9) foreclosure of $752,337.73 mechanic's lien against all Defendants; and (10) foreclosure of $3,168,536 supplemental mechanic's lien against all Defendants.

Defendant Payton Lane answered the Amended Complaint and specifically denied the bulk of the allegations contained in it. Payton Lane further interposed counterclaims against Plaintiffs for (1) breach of contract; (2) delay; and (3) breach of the covenant of good faith and fair dealing as well as a cross-claim for indemnification and contribution against Perkins.

Defendant Perkins filed its Answer in which it, too, denied the bulk of the allegations in the Amended Complaint. In addition, Perkins asserted counterclaim against Plaintiff, a cross-claim against all of the co-defendants to foreclose on its mechanics' lien, and additional cross-claims against Payton Lane for breach of contract, quantum meruit, unjust enrichment and

5

contribution and/or indemnification. So too, Lincoln General answered the Amended Complaint with general denials and a cross-claim against Payton Lane for indemnification.

In August 2008, the parties submitted a "Stipulation and Order Discharging Two Liens of Record, Dismissing Six Defendants from the Action and Amending Caption" [DE 91]. Judge Feuerstein "so ordered" the Stipulation and Order on December 8, 2009 [DE 109]. Pursuant to the Stipulation, the case was dismissed as to Defendants Hampton Air East, Inc., Lipsky Construction Co., Inc., Combined Efforts Carpentry Contracting Inc., CBS Technologies Corp., S & J Mechanical Corp. of New York and "JOHN DOE # 1" through "JOHN DOE # 10," pursuant to Fed. R. Civ. P. 41(a)(1)(ii).

Defendants Benenson, Douglas, Diam-N-Blu, ITB and Peterson never responded to the original or Amended Complaint and Plaintiffs accordingly seek a default judgment [DE 88]. To date, there has been no Notation of Default entered on the record by the Clerk's Office. Plaintiffs have submitted a "Request for Clerk's Certificate of Default," but have not pursued this issue with the Clerk's Office to have the necessary Notation of Default entered in the record. Plaintiffs can remedy these circumstances by taking appropriate action with the Clerk's Office.

As to the actual entry of default and a default judgment, a calculation of damages against five defaulting Defendants here is complicated by the presence of three non-defaulting Defendants. In a situation "where some but not all defendants have defaulted, the courts have consistently held that it is appropriate to enter judgment solely as to liability and not as to the amount of damages to be assessed against the defaulting party, since a separate determination of damages would pose the prospect of inconsistent judgments." *Montcalm Publ'g Corp. v. Ryan*,

807 F. Supp. 975, 978 (S.D.N.Y. 1992) (quoting *Friedman v. Lawrence*, No. 90 Civ. 5584, 1991 WL 206308, at *4 (S.D.N.Y. Oct. 2, 1991)). As Magistrate Judge Gold recently noted:

> This principle derives from the Supreme Court's decision in 1872 in *Frow v. De La Vega*, 82 U.S. 552 (1872). The *Frow* holding has been narrowed to cases involving true joint liability. Nonetheless, courts have also consistently delayed damages inquests even where a plaintiff seeks joint and several liability in order to avoid the problems of dealing with inconsistent damage determinations.

*Harvey v. Home Savers Consulting Corp.*, No. 07-CV-2654, 2008 WL 724152, at *1 (E.D.N.Y. Mar. 17, 2008) (internal citations and quotations omitted); *see also Long Island Hous. Services v. Greenview Properties, Inc.*, No. 07 CV 0352, 2008 WL 150222, at *2 (E.D.N.Y. Jan. 11, 2008) ("When there are multiple defendants who may be jointly and severally liable for damages alleged by plaintiff, and some but less than all of those defendants default, the better practice is for the district court to stay its determination of damages against the defaulters until plaintiff's claim against the nondefaulters is resolved."); *Lawrence v. Vaman Trading Co., Inc.*, No. 92 Civ. 0377, 1993 WL 190266, at *2 (S.D.N.Y. May 28, 1993) (same).

Here, Plaintiffs have alleged that all of the Defendants, including those who have appeared (Payton Lane, Perkins, Lincoln General) and those who have failed to appear (Benenson, Douglas, Diam-N-Blu, ITB and Peterson) are liable to Plaintiffs on various causes of action. In similar cases, Plaintiff have argued that a court should sever the claims against the defaulting defendants from those of the answering defendants. It is clear here, however, that because all of the Defendants "are alleged to have committed these acts together, they may be held jointly and severally liable for the same damages." *Harvey*, 2008 WL 724152 at *1. Accordingly, "deferring consideration of damages with respect to the defendants in default until

after [Plaintiff's] contested claims are litigated will minimize the risk of inconsistent awards." *Id.*

For these reasons, I respectfully recommend to Judge Feuerstein that the entry of a default judgment and the calculation of damages against Defendants Benenson, Douglas, Diam-N-Blu, ITB and Peterson be deferred until the case is resolved as to the non-defaulting Defendants Payton Lane, Perkins and Lincoln General.

Counsel for Plaintiffs is directed to serve a copy of this Report and Recommendation upon defaulting Defendants Benenson, Douglas, Diam-N-Blu, ITB and Peterson forthwith and to file proof of service on ECF.

**Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report and Recommendation to file written objections.  *See also* Fed. R. Civ. P. 6(a) and (e).  Such objections shall be filed with the Clerk of the Court via ECF.  A courtesy copy of any objections filed is to be sent to the chambers of the Honorable Sandra Feuerstein, and to the chambers of the undersigned.  Any requests for an extension of time for filing objections must be directed to Judge Feuerstein prior to the expiration of the ten (10) day period for filing objections.  Failure to file objections will result in a waiver of those objections for the purposes of appeal.  *Thomas v. Arn,* 474 U.S. 140, 155 (1985)*; Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir.), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).**

**SO ORDERED.**

Dated: Central Islip, New York
March 27, 2009

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge