**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
AMERICAN MANUFACTURERS MUTUAL
INSURANCE COMPANY and AMERICAN
MOTORISTS INSURANCE COMPANY,

                Plaintiffs,

    - against -                                  **MEMORANDUM AND ORDER**
                                                            CV 05-5155 (AKT)

PAYTON LANE NURSING HOME, INC.,
PERKINS EASTMAN ARCHITECTS, P.C., and
LINCOLN GENERAL INSURANCE COMPANY,

                Defendants.
----------------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.    PRELIMINARY STATEMENT**

    Defendant Perkins Eastman Architects, P.C. ("Defendant" or "Perkins") moves [DE 217] for reconsideration of this Court's February 2, 2010 Memorandum and Order [DE 213] (the "February 2, 2010 Order") denying Defendant's motion for summary judgment. Plaintiffs American Manufacturers Mutual Insurance Company and American Motorists Insurance Company ("Plaintiffs" or "Sureties") have filed opposition [DE 217] to the motion, and Perkins served a reply [DE 219]. Based upon my review of the parties' submissions and the applicable law, I find that Perkins has not made the requisite showing that this Court overlooked controlling decisions or factual matters raised in the underlying motion which would warrant reconsideration of the February 2, 2010 Order. The motion for reconsideration is therefore GRANTED, and I am adhering to my original decision.

## II. STANDARD OF REVIEW

Motions for reconsideration under Rule 59(e) are governed by Local Rule 6.3, which requires the moving party to "set forth concisely the matters or controlling decisions which counsel believes the court has overlooked." E.D.N.Y. Local R. Civ. P. 6.3; *Myers v. Okada*, No. 08-CV-1635, 2008 WL 4724579, at *1 (E.D.N.Y. Oct. 23, 2008). A motion for reconsideration is within the sound discretion of the district court. *See Rates Tech. Inc., v. Mediatrix Telecom, Inc.*, CV 05-2755, 2007 WL 2581776, at *1 (E.D.N.Y. Sept. 5, 2007) (citing, *inter alia, Bueno v. Gill*, 237 F. Supp. 2d 447, 449 (S.D.N.Y. 2002)).

In the Second Circuit, the standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (holding that the lower court's reconsideration of a summary judgment motion was not an abuse of discretion because the moving party presented "data the court had not previously considered," such as extensive legislative history on the relevant statute and new case law); *see also Bell Sports, Inc. v. Sys. Software Assocs., Inc.*, 71 F. Supp. 2d 121, 126 (E.D.N.Y. 1999). Motions for reconsideration "should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader*, 70 F.3d at 257. This heightened burden is imposed "to dissuade repetitive arguments on issues that have already been considered fully by the Court." *Ruiz v. Comm'r of the Dep't of Transp.*, 687 F. Supp. 888, 890 (S.D.N.Y. 1988), modified on other grounds, 934 F.2d 450 (2d Cir. 1991); see also *Equal Employment Opportunity Comm'n v. Fed. Express Corp.*, 268 F. Supp. 2d 192, 195 (E.D.N.Y. 2003) (holding

that a motion for reconsideration "is to be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the court"). The scope of a motion for reconsideration, therefore, is extremely narrow and is an "extraordinary remedy to be employed sparingly in the interest of finality and conservation of scarce judicial resources." *In re Health Mgmt Sys. Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000).

### III.  DISCUSSION

In support of its motion for reconsideration, Perkins argues that Plaintiffs' breach of contract claim against Perkins "is a claim for malpractice, which requires expert proof in order to establish that there was a departure from accepted standards of practice, and that the departure was a proximate cause of [Plaintiff's alleged] injury." Def.'s Mem. [DE 217] at 10. The Sureties oppose, arguing that Perkins is

> urg[ing] the Court to reconsider the very same arguments and authorities cited . . . during the briefing of the summary judgment motion. Perkins points to no important matter of fact or controlling decision of law that this Court overlooked or misapprehended in any way. The fact that Perkins disagrees with the Court's ruling is not a basis for granting the extraordinary relief of reconsideration.

Pls.' Mem. [DE 219] at 2.

### A. The Breach Of Contract Claim

Perkins takes issue with the Court's finding that "[t]he Sureties bring their Eighth Claim, as subrogees of Payton Lane, against Perkins for breach of the PEA Agreement, *not* for architectural malpractice." Feb. 2, 2010 Order [DE 213] at 19 (emphasis in original). Perkins further disputes the Court's finding that "the Sureties do not allege malpractice or negligence, and Perkins has not provided any evidence to persuade the Court that such assertions should be

3

read into the Sureties' Eighth Claim." *Id*. at 21. In the motion for reconsideration, Perkins argues that this Court "overlooked the law in New York that a breach of contract for professional services **is** considered a claim for malpractice. . . ." Def.'s Mem. at 3[1] (emphasis in original).

Perkins relies on *R.M. Kliment & Frances Halsband, Architects v. McKinsey & Co., Inc.*, 3 N.Y.3d 538, 788 N.Y.S.2d 648 to support its argument that "if the claim is 'essentially a malpractice claim couched in breach of contract terms,' it is a claim for malpractice." Def's Mem. at 3-4 (quoting *Kliment*, 3 N.Y.3d at 542, 788 N.Y.S.2d 651). Perkins contends that because "the need for Plaintiffs' claim to be supported by expert proof was the focal point of Perkins' [summary judgment] motion," the Court may have "overlooked" the authority cited by Perkins, namely, *Kliment*. However, counsel's current assertion that *Kliment* provided controlling authority for its summary judgment motion is belied by the fact that counsel failed to include any discussion of *Kliment* in its original moving brief. In fact, Perkins did not reference the *Kliment* decision until pages 8-9 of its Reply Brief [DE 182] and, it is worth noting, such reference was done in the form of a "*see*" directive as an attempt to distinguish a case cited by Plaintiffs. *Kliment* was cited for the proposition that "[t]he claim that PEA improperly certified the payment requisitions is not even close to being akin to failing to achieve a particular

---

[1] Perkins further contends that "this Court's holding that a breach of contract for professional services is not malpractice would be in direct conflict with New York law[.]" Def.'s Mem. at 3 (emphasis in original). However, in denying Perkins' summary judgment motion, this Court did not make such a ruling. Rather, the Court found that under the particular facts and circumstances of this case, as against Perkins, the Sureties had alleged a claim for breach of contract -- not a malpractice claim. Perkins' motion for summary judgment was denied because "there exist material issues of fact as to (1) the scope of Perkins' obligations under the PEA Agreement to administer the construction phase of the Project, and (2) whether Perkins fulfilled its obligations." The Court held that Perkins had "not met its burden to establish that there is no issue of material fact whether it fulfilled such duties." Feb. 2, 2010 Order at 28.

4

promised result." DE 182 at 8. In the explanatory parenthetical, Perkins stated that *Kliment* "[held] that an architect's failure to abide by its contractual obligations to comply with the relevant building codes was a malpractice claim and consistent with an architect's ordinary professional obligations and did not guarantee a particular result." *Id*. at 9.

Notwithstanding the placement to which Perkins relegated the *Kliment* citation in its summary judgment papers, this Court did consider *Kliment* in the context of Perkins' dispositive motion and determined that *Kliment* did not apply to the circumstances presented there. In reviewing Perkins' motion for reconsideration, the Court has again thoroughly reviewed *Kliment*. The issue in that case stemmed from an architectural services agreement which provided that disputes arising from the contract would be subject to arbitration. *Kliment*, 3 N.Y.3d at 540, 788 N.Y.S.2d at 649. Following the building owner's submission of a demand for arbitration, the architect commenced an Article 75 special proceeding for a permanent stay of arbitration, arguing that the claim was barred by the three-year statute of limitations in Article 214(b) with regard to nonmedical malpractice actions.[2] *Id*. The issue addressed by the New York Court of Appeals was "whether the breach of a provision in an architectural contract requiring that plans, drawings and specifications comply with applicable building codes is governed by the three-year statute of limitations for malpractice claims or the more generous six-year contract limitations period." *Id*. at 539, 648. In deciding this issue, the Court of

---

[2] C.P.L.R. Section 214(6) provides that a three-year statute of limitations covers "an action to recover damages for malpractice, other than medical, dental or podiatric malpractice, regardless of whether the underlying theory is based in contract or tort." While the statute makes clear that claims for architectural malpractice can sound in *either* contract *or* tort, it does not *mandate* that every claim against an architect be a malpractice claim, to the exclusion of contract claims.

5

Appeals thoroughly analyzed the C.P.L.R. provision, finding that "[t]he Legislature specifically amended this statute in 1996 to counteract the effect of decisions by this Court that 'abrogat[ed] and circumvent[ed] the original legislative intent' by allowing actions that were technically malpractice actions to proceed under a six-year contract statute of limitations." *Id*. at 541, 649-50 (citation omitted).

Prior to passage of Article 214(6), New York courts determined the appropriate statute of limitations in nonmedical malpractice actions based upon the proposed remedy rather than the theory of liability. *Id*. at 541, 650 (citations omitted). This resulted in a situation where "parties were permitted to maintain a malpractice action under a breach of contract theory within the six-year statute of limitations, but were limited to damages available in a contract action if the three-year malpractice limitations period had expired." It was this discrepancy which the Legislature sought to correct in passing Article 214(6). *Id*. The court in *Kliment* further noted the statute was intended to, *inter alia*, "reduce potential liability of insurers and corresponding malpractice premiums, and to restore a reasonable symmetry to the period in which all professionals would remain exposed to a malpractice suit." *Id*. at 542, 649. Even though the claims against the architect involved failure to comply with provisions contained within the architectural agreement,[3] the court held the action still fell within the three year statute of limitations. *Id*. at 542-43, 651. In reaching this decision, the court specifically found that "[a]llowing this claim to proceed would accomplish the precise result the Legislature sought to prevent -- allowing what is essentially a malpractice claim to be couched in breach of contract

---

[3] The provision at issue was whether "[a]ll plans, drawings, specifications and other documents prepared by Architect . . . [comply] with all laws, codes, ordinances and other requirements applicable to the Project. . . ." *Kliment*, 3 N.Y.3d at 540, 788 N.Y.S.2d 649.

terms in order to benefit from the six-year statute of limitations." *Id*. at 543, 651. Thus, the Court of Appeals held "that the purpose of the statute is best served by applying the three-year statute of limitations applicable to all nonmedical professional malpractice claims." *Id*. at 648-49, 539-40.

In its motion for reconsideration, Perkins makes liberal use of the language contained in *Kliment* to support its position that the Sureties' breach of contract claim should be deemed a malpractice claim. Def's Mem. at 3-4. At first glance, the language quoted by Perkins appears to support that position. However, when *Kliment* is read in context, it becomes apparent that the Court of Appeals' decision pertained to the application of the appropriate statue of limitations to claims against professionals and was based largely on an analysis of the legislative intent underlying the statute. *Kliment* does *not* prohibit an injured party from bringing a breach of contract claim against an architect or other professional and no subsequent case has so held.

With one exception, the other cases cited by Perkins at pages 5-7 of both its moving brief and reply brief likewise pertain to the application of the shorter statute of limitations to both breach of contract and malpractice claims against professionals, and thus the Court need not address such cases. The exception is *Travelers Indemnity Co. v. Zeff Design*, 60 A.D.3d 453, 875 N.Y.S.2d 456 (N.Y. App. Div. 1st Dep't 2009), which Perkins cites as an example of the New York courts' "uniform[ity] in following . . . *Kliment*." Def.'s Mem. at 5. However, the court in *Zeff* dismissed Plaintiff's breach of contract claims against the defendant engineer not because such claims were automatically transformed into malpractice claims (as Perkins argues), but rather, because the breach of contract claim was "based on the same allegations of professional malpractice," and Travelers failed to make the required showing of some difference between the

7

two sets of damages. *Zeff Design*, 60 A.D.3d at 455, 875 N.Y.S.2d at 459. *Zeff*, therefore, is distinguishable from the instant case, where Plaintiffs have opted to bring only one claim -- for breach of contract -- against Perkins. *Zeff* is therefore inapposite for these purposes.

Having found that neither *Kliment* nor any other case cited by Defendant "holds that Plaintiffs' claim against Perkins is, in fact, a malpractice claim[,]" (Def.'s Reply Mem. at 4), the Court concludes that it has not overlooked controlling New York law which would have altered the conclusions drawn in denying Perkins' motion for summary judgment.

Even if Perkins had met the threshold requirements under Rule 59(e) and Local Rule 6.3, the outcome would not be any different here. Perkins asserts that Plaintiff's breach of contract claim "is a malpractice claim" because, *inter alia*, the underlying contract is for architectural services. *See* Def.'s Mem. at 9-10. Following a comprehensive search, this Court has found cases decided under New York law where an injured party has brought a breach of contract claim against an architect or similar professional.[4] *See, e.g.*, *Liberty Mut. Ins. Co. v. N. Picco & Sons Contracting Co., Inc.*, No. 05 Civ. 217, 2008 WL 190310, at *2, *13-14 (S.D.N.Y. Jan. 16, 2008) (plaintiff surety's breach of contract claim against architect); *Sommer v. Fed. Signal Corp.*, 79 N.Y. 2d 540, 552, 583 N.Y.S.2d 957, 962 (N.Y. 1992) (building owner's breach of contract and negligence claims against fire alarm company whose "duty to act with reasonable care is not only a function of its private contract with 810 but also stems from the nature of its services");

---

[4] Under New York law, cases against similarly situated non-medical professionals, such as architects, engineers and public accountants, are treated as analogous. The professional licensing of such professionals is governed by Title VII of the New York Education Law. Certainly Perkins would not dispute this analogy, as in its moving brief it cites to cases pertaining to various professionals, such as auditors and engineers (Def.'s Br. at 6), and, in the course of its argument, compares itself to a law firm being sued for breach of a retainer agreement and an accounting firm being sued for breach of an auditing agreement (Def.'s Reply Br. at 3).

*Children's Corner Learning Ctr. v. A. Miranda Contracting Corp.*, 64 A.D.3d 318, 320, 879 N.Y.S.2d 418, 420 (N.Y. App. Div. 1st Dep't 2009) (plaintiff's claims against architect for breach of contract and professional malpractice); *17 Vista Fee Assocs. v. Teachers Ins. & Annuity Assoc. of Am.*, 259 A.D.2d 75, 80, 693 N.Y.S. 2d 554, 557 (N.Y. App. Div.1st Dep't 1999) (affirming grant of leave to amend for plaintiff to add breach of contract claim against engineer); *Board of Ed. of Hudson City Sch. Dist. v. Sargent, Webster, Crenshaw & Folley*, 146 A.D.2d 190, 195, 539 N.Y.S.2d 814, 817 (N.Y. App. Div. 3d Dep't 1989) (building owner's breach of contract claims against architect); *Diocese of Rochester v. R-Monde Contractors, Inc.*, 562 N.Y.S.2d 593, 595, 148 Misc. 2d 926, 928 (N.Y. Sup. Ct. Monroe County 1989) (building owner's breach of contract claims against architect).[5] Moreover, it is well established under New York law that "claims for professional malpractice and breach of contract may co-exist, even though both arise out of the professional's contractual obligations." *Children's Corner Learning Ctr.*, 64 A.D.3d at 324, 879 N.Y.S.2d at 422 (citing *Sommer*, 79 N.Y.2d at 551, 583 N.Y.S.2d at 957; *17 Vista Fee Assocs.*, 259 A.D.2d at 83, 693 N.Y.S.2d at 554).

In their opposition brief, Plaintiffs address *Board of Education of the Hudson City School District v. Sargent, Webster, Crenshaw & Folley*, 146 A.D.2d 190, 539 N.Y.S.2d 814 (N.Y. App. Div. 1989). Pls.' Br. at 7 n.2. Although this case does not constitute binding authority upon this Court, it is nonetheless helpful here, particularly since it addresses a building owner's breach of

---

[5] The Court notes that if Perkins' arguments were accepted at face value, then under New York law, the redress available to an injured party who had entered into a contract for architectural services would be limited to a claim for malpractice regardless of the underlying circumstances, and such party could never bring a breach of contract claim against the offending architect. In fact, under Perkins' theory, an architectural firm could never be sued for anything other than malpractice.

9

contract claims against an architect where the architectural services agreement was based upon the American Institute of Architects ("AIA") standard form. This is the same contract at issue in the instant case, and contains several substantially similar provisions regarding the architect's responsibilities. *See Sargent*, 146 A.D.2d at 192-3, 539 N.Y.S.2d at 816. Following trial and appeal in *Sargent*, the court (1) affirmed a directed verdict in favor of the building owner on the first breach of contract claim against the architect, and (2) reversed the directed verdict in favor of the architect and reinstated the owner's second breach of contract claim. *Id.*, at 195, 817. In reaching this decision, the court in *Sargent* analyzed the exculpatory clause in the architectural services agreement, which, like the PEA agreement, provided that the architect was not responsible for other parties' failures "to carry out the Work in accordance with the Contract Documents." *Id.*; *see also* PEA Agreement, ¶ 1.4.5. The court found that despite the exculpatory clause, which clauses, it noted, are generally "disfavored and are narrowly construed," the architect should be held liable for the defects because it knew about such defects, and "the underlying rationale for exonerating an architect under the exculpatory clause does not apply to defects known by the architect. *Id.*, at 196, 818. The court in *Sargent* further stated as follows:

> When, as a result of periodic inspection, an architect discovers defects in the progress of the work which the owner, if notified, could have taken steps to ameliorate, the imposition of liability upon the architect for failure to notify would be based on a breach of his own contractual duty, and not as a guarantor of the contractor's performance.

*Id.* (citation omitted). The court in *Sargent* also noted that "[t]he cost to correct and replace defective construction may be a proper measure of damages for a breach of contract by an architect." *Id*. at 198, 819.

In its Reply Brief, Perkins asserts that the portion of *Sargent* addressed by Plaintiffs "is no longer good law[,]"as it "was decided 15 years before *Kliment*. Without acknowledging that *Sargent* has never been criticized (and, in fact, continues to be relied upon by courts), Perkins maintains that in *Kliment*, the Court of Appeals stated that *Sears, Roebuck & Co. v. Enco Associates*, 43 N.Y.2d 389, 401 N.Y.S.2d 767 (N.Y. 1977)[,]" upon which, according to Perkins, *Sargent* relied, was superseded by CPLR Article 214(6). Def's Reply Mem. at 8. Perkins goes on to argue that, "even pre-*Kliment*, the Third Department's decision in *Sargent, Webster* failed to properly interpret and apply *Unger*." *Id*. at 8 n. 2. While the Court appreciates counsel's efforts here, counsel nonetheless does not cite any authority for its position that *Sargent* "is no longer good law."[6] This Court has found no support for such generalized assertion by Perkins and specifically has found no negative discussion of *Sargent*.

The court's decision in *Liberty Mutual Insurance Co. v. N. Picco & Sons Contracting Co., Inc.*, No. 05 Civ. 217, 2008 WL 190310 (S.D.N.Y. Jan. 16, 2008) is instructive here for several reasons. First, the context of the case and the parties' relationships were similar to those in the instant case. The plaintiff surety (who, similar to the current case, entered into a takeover

---

[6] Although Perkins is correct that *Sears* was superseded by *Kliment*, it was only to the extent that, under the revised CPLR provision, the three-year statute of limitations applied to "an action to recover damages for malpractice . . . regardless of whether the underlying theory is based in contract or tort[.]" CPLR Art. 214(6); *see Keller v. Lee*, No. 97-9123, 1998 WL 398815, at *1 (2d Cir. Jun. 5, 1998) (citing *Sears, Roebuck & Co.*, 43 N.Y.2d 389, 401 N.Y.S.2d 767). The court in *Sargent* cited *Sears* for the proposition that it was possible that, as against the architect, the building owner had viable claims for both breach of contract and malpractice. *Sargent*, 146 A.D.2d at 198, 819 (citing *Sears*, 43 N.Y.2d at 396). As discussed above, it is well-settled under New York law that claims against a professional for breach of contract and malpractice may co-exist. Moreover, *Sargent* did not pertain to the applicability of the appropriate statute of limitations period under Article 214(6). Thus, the portion of *Sargent* which relied upon *Sears* is not effected by *Kliment*.

11

agreement with the project owner following the general contractor's default) asserted a breach of contract claim against the architect, alleging that the architect breached the architectural services agreement by, *inter alia,* failing to inspect the work performed by other contractors and failing to notify the project owner of such defective, non-conforming work. *Liberty Mut. Ins. Co.*, 2008 WL 190310 at *2, *13. Thus, in a case decided in 2008 -- well after *Kliment* -- plaintiff surety, standing in the shoes of a contractor that had defaulted, was permitted to proceed with a breach of contract claim against an architect under circumstances similar to those present here, including a contract claim based upon the AIA standard form and provisions substantially similar to those at issue in the instant action. *Id*. at *13-14 Moreover, in analyzing the architect's motion for summary judgment (on the grounds that, under the agreement, it was not obligated to perform such inspection and notification duties), the court relied upon the Third Department's decision in *Sargent* to determine whether the exculpatory clause[7] in the architectural services agreement barred the architect's liability to the sureties. *Id*. at *15-16. The circumstances were distinguishable from *Sargent* because the architect in *Liberty Mutual* had fulfilled its duties to observe and report problems on the site with respect to the potential water damage. *Id*. at *16. The court in *Liberty Mutual* found that the architect's actions, coupled with the exculpatory claim in the contract, sufficed to bar the architect's liability. *Id*. It is noteworthy that this 2008 decision (*i.e.*, after *Kliment*), by a district court within the Second Circuit, relied upon *Sargent*, thereby supporting the conclusion that *Sargent* remains good law.

Moreover, the Appellate Division, First Department's recent decision in *Children's*

---

[7] The exculpatory clause at issue in *Liberty Mutual* is substantially similar to Paragraph 1.4.5 of the PEA Agreement between Perkins and Payton Lane.

*Corner Learning Center v. A. Miranda Contracting Corp.*, 64 A.D.3d 318, 879 N.Y.S.2d 418, which, although primarily addressing the contractor's third-party claims against an engineer for contractual indemnification and breach of contract, is likewise instructive for several reasons. First, the building owner's action against several defendants asserted both breach of contract claims and a malpractice claim against the architect. *Children's Corner Learning Ctr.*, 64 A.D.3d at 320, 879 N.Y.S.2d at 419. In fact, the court states that "claims for professional malpractice and breach of contract may co-exist, even though both arise out of the professional's contractual obligations." *Id*. at 324, 422. In this case, also decided well after *Kliment*, plaintiffs were permitted to proceed with breach of contract claims against an architect under circumstances similar to those present here. In addition, *Children's Corner* relies upon *Sargent*, thereby further supporting the Court's finding that *Sargent* remains good law. *Id*. at 323 at 422.[8] Perkins has consequently not presented any decision which the Court overlooked in concluding that Plaintiffs' Eighth Claim is a breach of contract claim.

### B. The Expert Witness Requirement

Even if Perkins had met the standard for reconsideration, the Court finds that Perkins has still not shown, as required, that the summary judgment motion was improperly decided. On summary judgment, Perkins' primary argument was that the Sureties' Eighth Claim was one for malpractice, which required submission of expert proof to support the allegation that Perkins failed to properly render its design or services. *See* DE 179 at 5. Perkins argued that because

---

[8] The Court further notes that the third-party defendant engineer in the *Children's Corner* case was represented by the law firm of Gogick, Byrne & O'Neill, LLP, counsel for Perkins in the instant action. Significantly, in *Children's Corner*, the plaintiff's breach of contract claims were permitted to proceed against an architect under New York law.

13

Plaintiffs had not submitted any expert proof, their claim should be dismissed as a matter of law. In support of its position, Perkins relied upon *530 East 89 Corp. v. Unger*, 43 N.Y.2d 776, 402 N.Y.S.2d 382 (N.Y. 1977), which, according to Perkins, "requir[ed] expert proof to establish that an architect breached the standard of care." Def.'s Mem. at 5-6 (citations omitted). However, *Unger* actually held that "[i]t is incumbent upon the plaintiff to present expert testimony to support allegations of malpractice . . . *except* where the alleged act of malpractice falls within the competence of a lay jury to evaluate." *Unger*, 43 N.Y.2d at 777, 402 N.Y.S.2d at 383 (citations omitted) (emphasis added). The instant action is a bench trial, which raises a question whether an expert is required in the first instance. Moreover, Plaintiffs vigorously dispute Perkins' assertion that no expert testimony was presented, which the Court noted in the summary judgment decision. *See* February 2, 2010 Order at 15-16; Pls.' Br. at 7. Thus, the Court found, at the very least, that there exists an issue of material fact whether an expert is required. Summary judgment was, therefore, precluded.

IV. CONCLUSION

For all of the foregoing reasons, Perkins' motion for reconsideration is GRANTED, and I am adhering to my original decision.

**SO ORDERED.**

Dated: Central Islip, New York
      February 20, 2010

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge