**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
AMERICAN MANUFACTURERS MUTUAL
INSURANCE COMPANY and AMERICAN
MOTORISTS INSURANCE COMPANY,

                        Plaintiffs,

                                                            **ORDER**

            - against -
                                                            CV 05-5155 (AKT)

PAYTON LANE NURSING HOME, INC.,
PERKINS EASTMAN ARCHITECTS, P.C. and
LINCOLN GENERAL INSURANCE COMPANY,

                        Defendants.
-------------------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.      PRELIMINARY STATEMENT**

        Defendant Payton Lane Nursing Home, Inc. ("Payton Lane") moves, *in limine*, for an

order excluding the introduction of evidence by Plaintiffs "that any payments made by

[P]laintiffs to E.W. Howell & Company, Inc. ('Howell') were on account of the obligations of

Payton Lane (i.e. were not on account of [P]laintiffs' construction completion obligations)." *See*

Affirmation of Jeffrey G. Stark in Support of *In Limine* Motion ("Stark Aff.") [DE 218], ¶ 1.

Annexed to the Stark Affirmation are Payton Lane Exhibits A through M.[1]  Payton Lane also

submitted the Supplemental Affirmation of Robert C. Angelillo ("Angelillo Supp. Aff.")

[DE 222] with Exhibits N and O.[2]  Defendant Lincoln General Insurance Company ("Lincoln")

---

[1]      In support of its motion, Payton Lane submitted only a Notice of Motion and the
Stark Affidavit with the annexed exhibits.  No memorandum of law was filed, in violation of
E.D.N.Y. Local Rule 7.1.  The Court, however, in its discretion, has chosen to address the issues
raised.

[2]      The Court notes that Payton Lane did not request leave to file the Supplemental
Affirmation despite the Court's clear statement that no reply papers were permitted.

joins Payton Lane's motion *in limine* to preclude the evidence referenced here. *See* DE 223. In support of its motion, Lincoln submitted only a Notice of Motion and relies entirely on Payton Lane's papers. *Id*.

Plaintiffs American Manufacturers Mutual Insurance Company and American Motorists Insurance Company ("Plaintiffs" or "Sureties") filed opposition papers which consist of a Memorandum of Law in Opposition to Defendant's *In Limine* Motion ("Pls.' Mem.") [DE 232] and the Affidavit of Steven H. Rittmaster ("Rittmaster Aff.") [DE 231], to which Exhibits 1 through 4 are annexed.

Based upon my review of the parties' submissions and the applicable case law, Payton Lane's Motion *In Limine*, joined in by Defendant Lincoln, is DENIED.

## II.    THE PARTIES' CONTENTIONS

In a prior litigation entitled *American Manufacturers Mutual Insurance Company and American Motorists Insurance Co. v. IDI Construction Co., Inc., James Stumpf, Theodore (Ted) Kohl, Kent M. Swig and Trevor Prince*, Index No. 602394-04 (N.Y. Sup. Ct. N.Y. County) (the "IDI case"), the Sureties brought claims against Ted Kohl ("Kohl") and others[3] seeking indemnification (for losses incurred during the course of the Project and the instant litigation) under a General Indemnity Agreement ("GIA") (Stark Aff., Ex. G), which the Sureties had entered into pursuant to their role as IDI's insurer on the Project. According to Payton Lane, in the IDI case, the Sureties sought indemnification from Kohl and others for payments made to

---

[3]    Kohl, along with others, was an indemnitor under the GIA, pursuant to which he agreed, *inter alia*, "to indemnify and hold harmless [the Sureties] upon demand for any and all losses sustained or incurred by reason of having executed any and all bonds." Stark Aff., Ex. A (Sureties' Complaint in the IDI case), ¶¶ 5, 9, 11.

Howell which "were part of plaintiffs' 'construction completion obligations[.]'" Stark Aff., ¶ 6.

In other words, Payton Lane argues, the Sureties took the position that the money they paid to

Howell was on account of the Sureties' obligations under the Takeover Agreement -- obligations

for which the Sureties were not entitled to payment from Payton Lane. Further, Payton Lane

maintains that the Sureties "obtained a judgment against Kohl based on those sworn allegations."

Stark Aff., ¶ 6.

In the instant motion, Payton Lane contends that the Sureties' position in the current

litigation -- that Payton Lane is liable for payments made by the Sureties to Howell in the amount

of $3,638,065.00 -- is contradictory to their earlier position in the IDI case. *Id.*, ¶ 7. Thus,

Payton Lane argues, under the doctrine of judicial estoppel, Plaintiffs are barred from asserting

this contradictory position in the instant litigation. *Id.*, ¶ 8. Specifically, Payton Lane asserts as

follows:

> To the extent that plaintiffs seek to offer proof in the present action
> that Payton Lane is liable for any of the monies for which plaintiffs
> have obtained judgment against Kohl, they are barred from doing so
> pursuant to the doctrine of judicial estoppel. Similarly, because of
> their claims to the contrary in the IDI case, plaintiffs are estopped
> from offering proof in the present case that any payments to Howell
> were the responsibility of Payton Lane, not plaintiffs.

*Id.*

In opposition, the Sureties argue that, in the IDI case, they took the position that "as of

December 5, 2005, the Sureties had paid $21,806,973 'to meet and perform its construction

completion obligations under the Payton Lane Performance Bond[,]" (*id.*, ¶ 2 and Stark Aff. Ex.

D at 4), and, under the GIA, the Sureties were entitled to repayment of the entire amount paid to

Howell. Pls.' Mem. at 2-3. The Sureties maintain that, contrary to Payton Lane's

characterization, their position in the instant action is that Payton Lane is liable for approximately $19.5 million which the Sureties paid to Howell "for work the Sureties agreed to perform under the Takeover Agreement [and] the substantial payments made to Howell for additional and/or corrective work." Rittmaster Aff., ¶ 4. The Sureties further contend that

> the fact that the Sureties' indemnitor is liable to repay the Sureties for all of the Sureties 'loss' as defined in the Indemnity Agreement he signed - but lacks the money to do so - in no way exculpates Payton Lane from its obligation to honor its own commitments in the Takeover Agreement it signed.

Pls.' Mem. at 5. According to the Sureties, their position in the instant litigation is not contrary to their earlier position in the IDI case and thus, the doctrine of judicial estoppel is inapplicable. *Id.*, ¶¶ 1, 4, 5. The Sureties also maintain that, in any event, their earlier position (as characterized by Payton Lane) was not adopted by the court in the IDI action, as further required under the doctrine of judicial estoppel. Rittmaster Aff., ¶ 7 and Ex. 1; Pls.' Mem. at 5.

## III. LEGAL STANDARD

Judicial estoppel "prevents a party from asserting a factual position in a legal proceeding that is contrary to a position previously taken by him in a prior legal proceeding." *Bates v. Long Island R.R. Co.*, 997 F.2d 1028, 1037 (2d Cir. 1993); *see also New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position ....") (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)). "It is a 'rare remedy' used to avoid inconsistent outcomes and to prevent litigants from abusing the power of the court." *In re Initial Pub. Offering Secs. Litig. (Liu v. Credit Suisse First Boston Corp.)*, 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005) (citing cases). A party invoking judicial

estoppel must show (1) that the party against whom the estoppel is asserted took an inconsistent position in a prior proceeding, and (2) the initial position was adopted by the first tribunal in some manner. *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir. 1999) (citing *Bates*, 997 F.2d at 1038). In addition, courts in the Second Circuit often consider "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138, 147 (2d Cir. 2005) (quoting *New Hampshire v. Maine*, 532 U.S. at 750-51); *Galin v. Goldfischer*, 03 Civ. 9019, 2008 WL 5484318, at *5 (S.D.N.Y. Dec. 31, 2008) (quoting *Zedner v. United States*, 547 U.S. 489, 503 (2006)).

"Judicial estoppel aims to 'preserve the sanctity of the oath by demanding absolute truth and consistency in all sworn positions' and to 'protect judicial integrity by avoiding the risk of inconsistent results in two proceedings.'" *Negron v. Weiss*, No. 06-CV-1288, 2006 WL 2792769, at *3 (E.D.N.Y. Sept. 27, 2006) (quoting *Bates*, 997 F.2d at 1038). However, the application of judicial estoppel is highly fact-specific. *See, e.g.*, *United States v. West Prods., Ltd.*, 168 F. Supp. 2d 84, 88-89 (S.D.N.Y. 2001) (summarizing cases). Within the Second Circuit, the application of judicial estoppel is limited to situations where the risk of inconsistent results threatens the integrity of the judicial process." *Simon*, 128 F.3d at 72-73. In other words, the previous purported inconsistent statement must have a material effect on the outcome of the subsequent proceeding. Judicial estoppel does not apply "if the statements or positions in question can be reconciled in some way . . ." *Negron*, 2006 WL 2792769, at *4 (citing *Simon*, 128 F.3d at 72-73). Similarly, the doctrine does not apply if the initial statement was the result of a good faith mistake or an unintentional error. *Id*.

## IV.    DISCUSSION

### A.    The Sureties' Prior Position Is Not "Clearly Inconsistent" With The Current Position

In the Amended Complaint, Plaintiffs allege that as of October 21, 2005, "all of the work (except for minor punch list work and closeout documentation) which the Sureties agreed to perform had been completed."  Stark Aff., ¶ 6 (quoting Am. Compl. (Stark Aff., Ex. F), ¶ 41)).  Payton Lane asserts that, based upon this allegation, "it is clear that in the IDI case plaintiffs were alleging that _all_ payments previously made to Howell, as well as the remaining payments due Howell were part of plaintiffs' 'construction completion obligations' and that therefore all such payments became the obligation of IDI and its indemnitors under the General Indemnity Agreement . . . ."  Stark Aff., ¶ 6 (emphasis included) and Ex. G.  The term "construction completion obligations" is quoted from an affidavit submitted by the Sureties in support of their summary judgment motion in the IDI case (the "Beatty Affidavit").  _See_ Stark Aff. Ex. D.  The portion of the Beatty Affidavit referenced by Payton Lane states as follows:

> In total, as of December 5, 2005, the Surety had paid $1,302,480.82 to resolve claims under the Payton Lane payment bond, and $21,806,973.69 to meet and perform its construction completion obligations under the Payton Lane performance bond, inclusive of liquidated damages.

Stark Aff., Ex. D, ¶ 13.  Payton Lane argues that the Sureties' earlier position in the IDI case is "directly contradictory" to the Sureties' position here, which, according to Payton Lane, is that "payments totaling $3,638,065.00 made to Howell are not, as asserted in the IDI case, the responsibility of [P]laintiffs under the Payton Lane Performance Bond, but are instead the responsibility of Payton Lane."  Stark Aff., ¶ 7 and Ex. F.

The Court finds that the Sureties' current position regarding Payton Lane's liability for damages under the Takeover Agreement is not "clearly inconsistent" with their previous position in the IDI case with respect to entitlement to indemnification from Kohl and others.  *See Uzdavines*, 418 F.3d at 147 (quoting *New Hampshire v. Maine*, 532 U.S. at 750-51).  Thus, the judicial estoppel doctrine is inapplicable to the circumstances presented here.

In the IDI case, the Sureties sought indemnification from their respective indemnitors, including Kohl, under the terms of the GIA (Stark Aff., Ex. G).  Pursuant to the GIA, the "Indemnitors agree[d] to indemnify and hold harmless Surety immediately upon demand for any and all Loss sustained or incurred by reason of having executed any and all Bonds."  Stark. Aff., Ex. G, ¶ 1.  The GIA defines "Loss" as follows:

> Loss includes all sums (a.) paid by Surety to claimants under the Bonds, (b.) sums required to be paid to claimants by Surety but not yet, in fact, paid by Surety, by reason of execution of such Bonds, (c.) all costs and expenses incurred in connection with investigating, paying or litigating any claim . . ., (d.) all costs and expenses incurred in connection with enforcing the obligations of the Principal and Indemnitors under this Agreement . . . and  (f) all other amounts payable to Surety according to the terms and conditions of this Agreement.

Stark Aff., Ex. 1 at 1.  The GIA further provides that

> [s]urety shall have the exclusive right to decide and determine whether any claim, liability, suit or judgment made or brought against Surety on any Bond shall or shall not be paid, compromised, resisted, defended, tried or appealed, and Surety's decision thereon shall be final and binding upon the Indemnitors.

*Id.*, ¶ 5.  Moreover, "[i]n the event of payments by Surety, Indemnitors agree to accept the voucher or other evidence of such payments as prima facie evidence of the fact and extent of the

liability of Indemnitors to Surety in any demand, claim or suit by Surety against Indemnitors." *Id.*, ¶ 1.

In the IDI action, the Sureties sought to recover the "Loss" they incurred "by reason of having executed any and all Bonds" with respect to the Payton Lane Nursing Home Project. *See* Pls.' Mem. at 3. Based upon the clear and unambiguous terms of the GIA Agreement and the evidence presented, the Court accepts the Sureties' assertion that, in the context of the IDI case, their "Loss included all the payments that had been made to Howell for the extra and corrective work that was Payton Lane's responsibility under the Takeover Agreement. . . ." Pls.' Mem. at 3. In the IDI case, Plaintiffs settled their claims with all of the Indemnitors except for Kohl. Plaintiffs served upon Kohl their motion for summary judgment with respect to their entitlement to indemnification in the amount of $23,109,454. Kohl subsequently served its opposition papers and Plaintiffs served a reply. However, prior to the Return Date of Plaintiff's summary judgment motion, Plaintiffs and Kohl entered into a Stipulation pursuant to which Kohl withdrew his opposition to Plaintiffs' summary judgment motion. Rittmaster Aff., ¶ 7 and Ex. 1. Plaintiffs' claims in the IDI case being unopposed, under the terms of the GIA Agreement and the applicable case law, Plaintiffs were entitled to indemnification from Kohl as long as they (1) paid the money which they claimed to be owed, and (2) acted in good faith in paying such money. *See GAIC v. Merrit-Meridian Const. Corp.*, 975 F. Supp. 511, 516 (S.D.N.Y. 1997). In the *GAIC* case, in addressing the surety's right to payment (*i.e.*, GAIC) from a general contractor Merritt who had defaulted, under an indemnity agreement substantially similar to the one at issue here, the court noted the following:

It is irrelevant whether Merritt was actually liable for the payments claimed by the subcontractors or actually defaulted on their contract with the owners, so long as GAIC acted in good faith in making the payments and completing the performance under the construction contracts. . . . In the absence of an indication of fraud or collusion between GAIC and the claimants, the subcontractors' and owners' claims of default invoked the Indemnification Agreement and its settlement clause.

*Id.* (citations omitted). As in the *GAIC* case, the Sureties in the IDI action were entitled to

indemnification from IDI regardless of whether IDI was actually liable for the underlying

payments, so long as the court found that the Sureties acted in good faith in making such

payments. In connection with their indemnification claims, the Sureties did not take a position as

to Payton Lane's liability for the money paid to Howell.[4] Thus, in pursuing their indemnification

claims against IDI, the Sureties did not make *any* representation with regard to its right to

recovery from Payton Lane.

The doctrine of judicial estoppel is inapplicable here because it requires that there be "a

true inconsistency between the statements in the two proceedings." *Simon*, 128 F.3d at 72-73.

"If the statements can be reconciled there is no occasion to apply an estoppel." *Allen v. City of

New York*, 03 Civ. 2829, 2007 WL 24796, at *8 (S.D.N.Y. Jan. 3, 2007) (quoting *Simon*, 128

F.3d at 73). Because the Sureties did not, in the IDI action, make any representation with regard

_____

[4]     As discussed below, throughout the course of the IDI case, the Sureties consistently referred to their claims against Payton Lane in the instant action. *See* Rittmaster Aff., ¶¶ 5-9. The Court therefore accepts the Sureties' assertion that its position in the IDI case was that under the GIA, they were entitled to indemnification for the full amount of their "loss," "without deducting anything by reason of the Sureties' entitlement to collect some of its loss from Payton Lane." Pls.' Mem. at 4. Moreover, in the instant litigation, "which was fully disclosed to all parties and the Court" in the IDI case, the Sureties are entitled to enforce their rights against Payton Lane under the Takeover Agreement. *Id.*

to their damages claim as against Payton Lane, their position in the instant litigation cannot be considered inconsistent.

Moreover, the Sureties' claims in the IDI action stemmed from an agreement and a set of relationships entirely separate from those involved in the instant litigation. In the IDI case, the Sureties' claims for indemnification arose from the GAI, which they entered into with the various Indemnifiers as IDI's insurer on the Project. On the other hand, however, Plaintiffs' instant claims for damages against Payton Lane are predicated upon Payton Lane's alleged breach of the Takeover Agreement, which the parties entered into following IDI's default and termination. Pursuant to the Takeover Agreement, the Sureties stepped into IDI's role as the contractor and, as such, became responsible for completion of the Project. The claims currently before this Court pertain to Payton Lane's obligations to repay the Sureties for work performed in connection with completion of the Project. Plaintiffs' indemnification claims in the IDI action are "wholly unrelated" to their position in the instant litigation and, as such, have no preclusive effect on Plaintiffs' separate and distinct damages claims against Payton Lane. *See Leadsinger, Inc. v. Cole*, 05 Civ. 5606, 2006 WL 2320544, at *6 (S.D.N.Y. Aug. 10, 2006).

Having found that Payton Lane has not satisfied the first requirement of a judicial estoppel claim, the Court does not need to address the second tenet, namely, whether Payton Lane has shown that Plaintiffs' purported earlier position was adopted by the court in the IDI case.

### B. The Sureties' Attempts To Collect The Money Paid To Howell

The Court now turns to address what it interprets as Payton Lane's implicit argument that, "having obtained a judgment against Kohl in the IDI case for all payments made to Howell"

10

(Stark Aff., ¶ 14), Plaintiffs are now attempting to recover more than the total amount which they paid to Howell by seeking damages against Payton Lane in the instant action. To the contrary, the Sureties emphasize that throughout the course of the IDI action, it was well known to all parties that they were also pursuing their damages claims against Payton Lane in federal court. Specifically, the Sureties assert that their "position in the State Court Action was that, while they had paid Howell some $19.5 million at the time, they [were] pursuing Payton Lane in the Federal Court Action for $6.7 million of that amount, which included Corrective Work CORs, the Extra Work CORS and the CCD Work (and contract balance and retainage)." Rittmaster Aff., ¶ 8. Moreover, Payton Lane has not provided any evidence that Plaintiffs intend to recover more than they paid to Howell and, based upon a thorough review of the record, the Court has not found any such indication. To the contrary, in the context of their summary judgment motion in the IDI case, the Sureties offered "to reduce the amount of its requested summary judgment by the amount in controversy in the pending litigation between the Surety and Payton Lane. . . ." Rittmaster Aff., ¶ 5. Moreover, the Court accepts the Sureties' assertion that they "have not and do not expect to collect anything on the judgment against Kohl," as Kohl is currently in bankruptcy and "will be entitled to a dollar-for-dollar reduction on the judgment entered against him." Rittmaster Aff., ¶ 7 n. 2. Thus, it is reasonable to conclude that the Sureties intend to collect only up to the amount they paid to Howell, and do not seek to recover more than that to which they are entitled.

## V.   CONCLUSION

For the foregoing reasons, including the absence of a "clear inconsistency" between (1) the Sureties' earlier position regarding entitlement to indemnification in the IDI action and (2)

their damages claims against Payton Lane in the instant action, Defendants Payton Lane and Lincoln have not established that the Sureties are judicially estopped from asserting the referenced position they have taken in this action.  Therefore, Payton Lane's motion *in limine*, joined in by Lincoln, is denied.

**SO ORDERED.**

Dated: Central Islip, New York
February 22, 2010

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge