**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X

AMERICAN MANUFACTURERS MUTUAL
INSURANCE COMPANY and AMERICAN
MOTORISTS INSURANCE COMPANY,

                Plaintiffs,

        - against -

PAYTON LANE NURSING HOME, INC.,
PERKINS EASTMAN ARCHITECTS, P.C. and
LINCOLN GENERAL INSURANCE COMPANY,

                Defendants.

----------------------------------------------------------------X

**ORDER**

CV 05-5155 (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

      Plaintiffs American Manufacturers Mutual Insurance Company and American Motorists

Insurance Company ("Plaintiffs" or "Sureties") move, *in limine*, to preclude Payton Lane Nursing

Home, Inc. ("Payton Lane") "from introducing evidence regarding its communications with the

New York State Department of Health ('DOH')[.]" *See* DE 224 at 1.  The Sureties contend that

preclusion is warranted because (1) Payton Lane has admitted that it maintained a phone log of

its telephone conversations with DOH (the "Log"); (2) on several occasions, the Sureties

demanded production of the Log; and (3) Payton Lane failed to produce the Log.  *Id*.

      The Sureties seek production of the Log in relation to their claims as to the validity of

certain Change Order Requests ("CORs"), which Payton Lane disputes.  *Id*.  The Sureties first

raised the issue of Payton Lane's DOH submissions in their reply papers in further support of

their motion for summary judgment [DE 165].  There, the Sureties asserted that, in support of

submissions to DOH requesting additional Medicaid reimbursements, "Payton Lane has

successfully obtained reimbursement of its costs, including the $3,910,913 owed to the Sureties

based on its representation that the $37 million mortgage is final." *See* DE 165-3 (Pls.' Reply Mem.) at 9; *see also* DE 165 (Rittmaster Aff.), ¶¶ 3-5 and Ex. 1 (Mar. 31, 2008 letter from Payton Lane to North Sea Associates (lessee of the Payton Lane Nursing Home) requesting that North Sea file an appeal with the DOH regarding reimbursement rates).[1]  In the instant motion, the Sureties contend that in these submissions to DOH, Payton Lane included CORs to support their request for increased Medicaid reimbursements.  However, the Sureties maintain, Payton Lane included CORs which Payton Lane rejected, but which the Sureties claim are valid and for which they are entitled to reimbursement from Payton Lane.  Pls.' Mem. at 1.  According to the Sureties, "by including these CORs in its submissions and seeking a cost increase in excess of $4 million based on the Sureties' CORs, Payton Lane acknowledged that the costs to perform this work had been incurred or would be incurred by Payton Lane and that Payton Lane should be estopped from denying the validity of the CORs." *Id.*

The Sureties further assert that in its Pretrial Memorandum, Payton Lane "disputes the Sureties' interpretation of the cost submissions and alludes to communications with DOH, including telephone conversations, that Payton Lane contends may be pertinent to understanding

---

[1]        In their summary judgment motion, the Sureties addressed Payton Lane's correspondence with DOH in support of their argument that Payton Lane was judicially estopped from making certain representations as to the validity of the CORs at issue (for which the Sureties seek reimbursement in this action).  Specifically, the Sureties raised this issue to contradict Payton Lane's argument that the judicial estoppel doctrine was inapplicable because Payton Lane had not benefitted from its purported earlier inconsistent statements.  The Sureties argued that, to the contrary, that Payton Lane had received benefits -- in the form of higher Medicaid reimbursement rates from DOH -- which, according to the Sureties, were the result Payton Lane's representation to DOH that the full amount of the mortgage was "permanent," *i.e.*, had been fully disbursed.  *See* DE 165, ¶¶ 3-5; DE 165-3 at 9.  The context in which this issue was raised on summary judgment is different from in the current context, and the Court references it only for the purpose of providing relevant background information related to the instant motion.

the cost submissions." *Id*. (citing DE 206 at 17-18). Thus, the Sureties argue, "[i]t would be patently unfair and prejudicial to allow Payton Lane to testify and otherwise submit evidence at trial regarding its communications with DOH when Payton Lane has not produced its Log detailing its calls with DOH." *Id*. at 1-2.

In opposition, Payton Lane argues that the motion should be denied because (1) it "does not maintain in its possession, custody and/or control" the Log sought by the Sureties; (2) the Sureties have not alleged "wilful disobedience or gross indifference" on the part of Payton Lane, as required to succeed on a motion for preclusion; and (3) "[s]ince Payton Lane is not offering any telephone logs as proof of its claims or as rebuttal documents to [P]laintiffs' claims against Payton Lane, [P]laintiffs' motion in this regard is moot." *See* DE 233 at 1-2.

The Sureties first learned of the Log from their review of Payton Lane's April 7, 2005 and July 13, 2005 Cost Increase Requests to DOH. DE 224 at 2 and Ex. 2. By email dated August 11, 2008, counsel for the Sureties' requested the phone logs referenced in the April 7, 2005 Cost Increase request, as well as "any other phone logs maintained by or on behalf of Payton Lane." DE 224 at 1-2 and Ex. 3.[2] Although Payton Lane's counsel did not respond in writing to the Sureties' request, counsel for the Sureties recalls "that Mr. Angellilo verbally indicated that all DOH related material in Payton Lane's possession, custody or control had been produced." DE 224 at 3. Thereafter, at Sam Klein's deposition on November 20, 2008, in response to the Sureties' question regarding whether he had copies of the phone logs, Mr. Klein responded "We

---

[2]     Plaintiffs note that the Log was also encompassed in their first document request dated August 6, 2007, which requested "[a]ll documents, including, but not limited to, internal memoranda, *telephone call records*, diaries, reports files or similar records respecting, [*sic*] concerning the Project." *See* DE 224 at 2 and Ex. 1, ¶ 25 (emphasis added).

have it somewhere.  This is three, four years old."  DE 224, Ex. 4 at 286-88.  Following receipt

of the Klein deposition transcript, counsel for the Sureties again asked Payton Lane's counsel to

produce the Log by email dated December 10, 2008.  DE 224 at 3 and Ex. 3.  Payton Lane's

counsel did not respond, and so the Sureties' counsel again requested the Log by email dated

December 23, 2008.  *Id.*

In their opposition papers, Payton Lane states that "[t]he only reason why Payton Lane

did not produce telephone logs along with the voluminous documentation that it did produce

concerning the DOH is that it does not have them."  DE 233 at 2.  In support of its position,

Payton Lane also submitted the Affidavit of Sam Klein, the President of Payton Lane, in which

Klein states that pursuant to counsel's request, on February 16, 2010 he "conducted an inspection

of Payton Lane's files for the phone logs referenced in plaintiffs' *in limine* motion [and] . . . [t]his

review revealed that Payton Lane is not in possession of the reference telephone logs."  Klein

Aff., ¶¶ 2-3.  Klein further states that "Payton Lane did not discard or destroy these telephone

logs at any time."  *Id.*, ¶ 4.  Finally, Klein states that, based upon a review of the transcript of his

deposition, "[a]pparently, my statement that 'we have it somewhere' in reference to the subject

logs was in error."  *Id.*, ¶¶ 5-6.

The Sureties rely upon Rule 26(e)(1) as the basis for the relief they seek.  That rule

requires a party to supplement or correct a disclosure or discovery response as follows:

> (A) in a timely manner if the party learns that in some material
> respect the disclosure or response is incomplete or incorrect, and if
> the additional or corrective information has not otherwise been made
> known to the other parties during the discovery process or in writing;
> or (B) as ordered by the court.

Fed. R. Cvi. P. 26(e)(1).  Rule 37(c)(1) provides that "[i]f a party fails to provide information or

identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Under the law as applied in the Second Circuit, the "preclusion of evidence under Rule 37(c)(1) 'is a drastic remedy and should be exercised with discretion and caution." *Rhone v. Untied States*, 04 Civ. 5037, 2007 WL 3340836, at *8 n. 6 (S.D.N.Y. Nov. 9, 2007) (quoting, *inter alia*, *Ebewo v. Martinez*, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004) ("The purpose of the rule is to prevent the practice of 'sandbagging' an opposing party with new evidence.").

In both the memorandum of law, which is signed by counsel, and the sworn Affidavit of Sam Klein, Payton Lane unequivocally asserts that it does not have the Log in its possession, custody or control. DE 233 at 2; DE 234, ¶ 3. Payton Lane further states that it has produced all documents "concerning the DOH[,]" including "the formal Cost Increase Request submissions upon which plaintiffs base their claims, correspondence between Payton Lane and DOH concerning those submissions, and even internal, handwritten notes from meeting and/or telephone conversations with DOH representatives. . . ." DE 233 at 2. The Court is unaware of any information to contradict Payton Lane's statements. Accordingly, the Court accepts Payton Lane's statement that the Log was not produced because Payton Lane does not have it.

The fact that Payton Lane does not have in its possession, custody or control the requested Log constitutes "substantial justification" under Rule37(c)(1) for Payton Lane's failure to produce such document.[3] Accordingly, the Court declines to impose sanctions upon Payton

---

[3] Counsel for Payton Lane further asserts that preclusion is warranted only where "there is some showing of wilful disobedience or gross indifference to the rights of the adverse party . . .[,]"and no such showing was made by the Sureties. *See* DE 233 at 2 (citing *Rattigan v.*

Lane pursuant to Rule 37(c)(1).

Notwithstanding this finding, it is unclear to the Court why Payton Lane was not forthcoming with such information to the Sureties' counsel during the discovery process. If Payton Lane did not have such Log, then it would have been prudent, or so it would seem, for Payton Lane to simply state as much in response to the Sureties' multiple requests. *See*, *e.g.*, DE 224, Ex. 3. Likewise, the Court finds somewhat disturbing the implication of statements in the Klein Affidavit which, if taken at face value, seem to indicate that Klein, the President of Payton Lane, was not asked to search for the referenced Log until February 16, 2010 -- one week before the commencement of trial, when, in fact, the first document request was served in August 2007. *See* DE 234, ¶ 4.

In any event, based upon the circumstances presented, preclusion of evidence regarding Payton Lane's communications with DOH is not warranted here. Payton Lane is on notice, however, that the Court will preclude any attempt to introduce the Log subsequently at trial as well as any information contained in the Log that has not otherwise been produced to the Sureties. In the alternative, should Payton Lane attempt to make such an offer of proof, the Sureties are free to use the information for cross-examination.

---

*Commodore Int'l Ltd.*, 87 Civ. 2729, 1989 WL 151678, at *4 (S.D.N.Y. Dec. 8, 1989). However, subsequent to *Rattigan*, which was decided in 1989, the Second Circuit stated as follows: "Since Rule 37(c)(1) by its terms does not require a showing of bad faith, we now hold that such a requirement should not be read into the Rule." *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir.2006) (quoted in *Rhone*, 2007 WL 3340836, at *8 n. 6)). In any event, in light of the finding of "substantial justification," I need not address such issue here.

**SO ORDERED.**

Dated: Central Islip, New York
February 22, 2010

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge