**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
AMERICAN MANUFACTURERS MUTUAL
INSURANCE COMPANY and AMERICAN
MOTORISTS INSURANCE COMPANY,

                Plaintiffs,

    - against -                                    **ORDER**

PAYTON LANE NURSING HOME, INC.,           CV 05-5155 (AKT)
PERKINS EASTMAN ARCHITECTS, P.C. and
LINCOLN GENERAL INSURANCE COMPANY,

                Defendants.
----------------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

       Before the Court are three motions *in limine* made by Defendant Perkins Eastman Architects, P.C. ("Perkins") seeking to preclude certain testimony by Plaintiffs' witnesses. Specifically, in these motions Perkins seeks to preclude Plaintiffs from offering: (1) Eric Schatz to provide opinion/expert testimony pursuant to Federal Rule of Evidence 701 [DE 225]; (2) any expert testimony, including that of two retained experts, in support of Plaintiffs' claim against Perkins [DE 226]; and (3) any proof with regard to certain industry customs and practices and the percentage of work completed on the Project [DE 227].

       In opposition, Plaintiffs American Manufacturers Mutual Insurance Company and American Motorists Insurance Company ("Plaintiffs" or "Sureties") submitted a single Memorandum of Law addressing Perkins' motions. *See* DE 238. The Court presumes the parties' familiarity with the relevant facts which were discussed at length in the Court's decisions

on the parties' summary judgment motions [DE 202, 203 and 213], and those facts will not be repeated here.

I. **PERKINS' MOTION TO PRECLUDE SCHATZ'S TESTIMONY**

Perkins moves to preclude Eric Schatz ("Schatz") from offering any testimony, opinion or evidence, including documentary evidence, relating to: (1) the custom and practice in the industry for reviewing and certifying payment requisitions; (2) the process and methodology Perkins undertook in reviewing and certifying the contractor payment requisitions; (3) the scope of work included in the schedule of values; and (4) the percentage of the work completed. Schatz is a Project Consultant for Greyhawk North America ("Greyhawk"), which served as the Sureties' construction consultant and on-site authorized representative in connection with the construction of the Payton Lane Nursing Home Project. *See* Schatz Aff. in Supp. of Pls.' Mot. for Partial Summary Judgment ("Schatz Aff."), ¶ 1.

A. **The Applicable Federal Rules of Evidence**

Rule 701 of the Federal Rules of Civil Procedure which deals with opinion testimony by lay witnesses states as follows:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701; *see also United States v. Kaplan*, 490 F.3d 110, 118 (2d Cir. 2007); *In re WorldCom, Inc. Secs. Litig.*, CV 02-3288, 2005 WL 675601, at *1 (S.D.N.Y. March 24, 2005). The Second Circuit has interpreted the scope of permissible testimony under Rule 701 broadly.

2

*See United States v. Ferguson*, No. 06-CR-137, 2007 WL 4556625, at *2 (D. Conn. Dec.20, 2007) (citation omitted). On the other hand, witnesses who testify to opinions "based on scientific technical, or other specialized knowledge" must be qualified as experts under Rule 702. Fed. R. Evid. 701, Advisory Committee Note (2000); *United States v. Garcia*, 413 F.3d 201, 211 (2d Cir. 2005). At the same time, however, Rule 701 "does not distinguish between expert and lay witnesses, but rather between expert and lay testimony." Fed. R. Evid. 701, Advisory Committee Note (2000).

  **B.**  **The Anticipated Scope Of Schatz's Testimony**

Relying upon *Didzbalis v. Heridan Transportation Co.*, 00 Civ. 4329, 2002 WL 31619071 (S.D.N.Y. Nov. 19, 2002), Perkins asserts that Schatz should be precluded from offering any testimony or evidence with regard to the custom and practice of an architect's construction administration responsibilities, including reviewing, approving and certifying payment requisitions. Perkins argues that since Schatz was not present when the work was performed and reviewed by Perkins, he does not have any personal, first-hand knowledge about those matters and his testimony on those issues is therefore not permitted. *Lightfood v. Union Carbide Corp.*, 110 F.3d 898, 911 (2d Cir. 1997).

In further support of its arguments, Perkins refers to certain questions and answers from Schatz's deposition. *See* Perkins Mem. at 4-7. Perkins maintains that the responses confirm Schatz has no first-hand knowledge regarding the scope of work encompassed in the various line items for the schedule of values used by IDI for its payment requisitions on the Project. Finally, Perkins argues that any testimony concerning stated percentages of completion of the work requires technical and specialized experience within the field design and construction.

3

In opposition, Plaintiffs assert that they are not producing Schatz as an expert witness. They maintain that Schatz's testimony will be limited to his observations on site and his comparison of those observations to the last IDI Payment Requisition, #22R, that was certified by Perkins. That information is reflected in two analyses prepared by Schatz which support Plaintiffs' claims, including Plaintiffs' assertion that the cost to complete the work far exceeded the balance remaining after Perkins' certifications. Plaintiffs further state that Schatz's testimony is directed to the breach of contract issues which underlie the Amended Complaint.

Lay opinion testimony is admissible when the inference is a conclusion drawn from a series of personal observations over time. *See* 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 701.03[1] (2d ed.2008); *Searles v. First Fortis Life Ins. Co.*, 98 F. Supp. 2d 456, 461 (S.D.N.Y. May 24, 2000) (noting that conclusions based on "a series of personal observations over time" may constitute personal knowledge). Lay witnesses are permitted to testify "to their opinions when those opinions are based on a combination of their personal observations of the incident in question and background information they acquired through their personal observations." *B&G Plastics, Inc. v. E. Creative Indus., Inc.*, No. 98 Civ. 0084, 2008 WL 307276, at * 8 (S.D.N.Y. Feb. 18, 2004). In *B&G Plastics, Inc.*, the court held that the president of the defendant company could present lay witness testimony regarding design modifications where the opinion was based on "both his observations of the product at issue and background information he has acquired about the industry from his experience." *Id.* (citing *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 265 (2d Cir. 1995)). The court further found that "a witness' experience and specialized knowledge obtained in his or her vocation should certainly be taken into consideration. The fact that the lay opinion testimony bears on the

ultimate issue in the case does not render it inadmissible." *B&G Plastics, Inc.,* 2008 WL 307276, at * 8.

Likewise, in *United States v. Rigas*, 490 F.3d 208, 225 (2d Cir. 2007), the Second Circuit held that a former company accountant could offer lay opinion testimony about the company's books, including the effects of allegedly fraudulent debt reclassifications on the company's relationship with other business entities. This Court finds the following reasoning in *Rigas* particularly apt as to the instant circumstances:

> It is undisputed that DiBella had personal knowledge of Adelphia's books. Tatum Partners, the company for which DiBella worked, was retained by Adelphia in August 2002, after Defendants were indicted, "to assist in the restatement or correction of Adelphia financial statements." DiBella began working as a full-time Adelphia employee in September 2002. In the course of nearly twenty months at Adelphia, DiBella developed what he characterized as "fairly extensive knowledge of the debt area of Adelphia" by reviewing the Co-Borrowing Agreements, and other documents within the company, focusing on "several of the areas of related-party transactions with the Rigas family, including security purchases, margin loans, other transactions." He also familiarized himself with Adelphia's accounting system and the software used to generate reports. Using data collected by Adelphia's accounting system, DiBella created Government Exhibit 101, a chart that summarized the affiliate receivable transactions between Adelphia and certain Rigas entities from 1999 through April 2002.
>
> DiBella testified, using Government Exhibit 101, about co-borrowing debt transferred from Adelphia's books to the ledgers of the RFEs. Brown had already testified that the purpose of the reclassifications was to mask the amount of money that the RFEs owed Adelphia. DiBella explained that these reclassifications involved (1) the reduction of debt in Adelphia's balance sheets; (2) a corresponding reduction in the amount owed to Adelphia by an RFE; and (3) the creation of a payable to the RFE from an Adelphia subsidiary. DiBella testified that Adelphia's net related-party receivable balance would have been $2.8 billion higher without the debt reclassifications, for a total of around $3.2 billion.

* * *

> The district court did not abuse its discretion in permitting DiBella to testify under Rule 701 about the effects of the disputed reclassifications. *Garcia*, 413 F.3d at 210. First, DiBella's testimony was based upon his observations during his twenty months as an Adelphia employee. Fed.R.Evid. 701(a). DiBella was responsible for correcting Adelphia's financial statements and was well-acquainted with the records of Adelphia and the RFEs. While Defendants argue that DiBella's opinion was based on what Adelphia's records should have shown, DiBella's testimony was based upon Adelphia's and the RFEs' records, and addressed the aggregate of what the RFEs would actually owe Adelphia if the debt reclassifications, which Brown and others testified were fraudulent, had not occurred.
>
> Second, DiBella's opinion about the effects of the reclassifications was "helpful to ... the determination of a fact in issue. . . ." Fed. R. Evid. 701(b). As the district court noted, testimony that summed up the government's allegations was quite "appropriate" in this complicated case. DiBella's testimony about both the undisputed $386 million and the reclassified $2.8 billion helped explain how the allegedly improper reclassification affected what the RFEs owed Adelphia.
>
> Third, DiBella's opinion about the reclassifications was "not based on . . . specialized knowledge," because he presumed that the reclassifications were shams, as Brown and others testified, and then explained how the reclassifications affected the amount the RFEs owed Adelphia. Fed. R. Evid. 701(c). Whether these reclassifications should have been carried on Adelphia's books, as a matter of appropriate accounting techniques, was a separate issue. While DiBella did testify briefly on redirect that moving the reclassifications to the RFEs' books was improper, the remainder of his testimony regarding the reclassifications related to how the reclassifications affected the amount the RFEs actually owed Adelphia. DiBella's deposition testimony in a later case that FAS 140 required the debt reclassifications to be recorded on Adelphia's books does not compel the conclusion that his testimony here was impermissible expert opinion.

*Id*. at 223, 225; s*ee also United States v. Garcia,* 413 F.3d 201, 215 (2d Cir. 2005) ("in considering the third prerequisite for lay opinion testimony, a court must focus on 'the reasoning

6

process' by which a witness reached his proffered opinion") (citation omitted); *Bank of China v. NBM LLC*, 359 F.3d 171, 181-82 (2d Cir.2004) (to the extent a witness's testimony was "grounded in the investigation he undertook in his role as a Bank of China employee," rather than on his specialized knowledge of international banking, his testimony "was admissible pursuant to Rule 701 of the Federal Rules of Evidence because it was based on his perceptions").

Upon analyzing the full opinion in *Didzbalis*, and the many Second Circuit decisions cited therein, the Court agrees with Perkins that the law in this Circuit precludes lay witnesses from testifying about custom and practice. Plaintiffs do not directly address Perkins' position about "custom and practice," or as to the "process and methodology" Perkins undertook in reviewing and certifying the contractor payment requisitions, but instead simply noted "the Sureties maintain that whether Perkins breached its contractual obligations can be determined by this Court as trier of fact." Pls.' Mem. at 3. Accordingly, the Sureties' witness, Eric Schatz, is precluded from offering any testimony that opines on custom and practice or as to what is typical or standard in the construction industry. *See generally Victor G. Reiling Assocs. & Design Innovation, Inc. v. Fisher-Price, Inc.*, 406 F. Supp.2d 171 (D. Conn. 2005).

However, Perkins has not demonstrated that Schatz's testimony should be precluded in its entirety. Schatz is therefore permitted to testify about his first-hand knowledge of the Project. *See Helena Assocs., LLC v. EFCO Corp.*, No. 06 Civ. 0861, 2008 WL 2117621, at *5 (S.D.N.Y. May 15, 2008) (allowing lay witnesses to testify about their observations as long as their testimony is based upon first-hand knowledge of the project and letting the trier of fact determine the weight to afford the lay witness' testimony).

As for any testimony regarding the schedule of values and the percentage of work completed, I am deferring further ruling until such time as this testimony is being introduced at trial. The parties are on notice that I intend to follow the guidance set forth in *Rigas* in this regard. If the Schatz testimony is based upon both his observations of the Project at issue and background information he has acquired about the industry from his experience, the witness will be permitted to offer opinion testimony on those matters. Additionally, if his opinion testimony is indeed based upon what he observed on site and documents he reviewed in preparing his analyses, he will be permitted to testify about what he himself prepared. To the foregoing extent, Perkins' motion [DE 225] is GRANTED, in part, and DENIED, in part.

## II. PERKINS' MOTION TO PRECLUDE EXPERT TESTIMONY

Perkins moves, *in limine* [DE 226], to preclude Plaintiffs from offering any expert testimony to support Plaintiffs' claim against Perkins, including the testimony of its retained experts, Donald E. Lefler, P.E. and Ivan Pollack, P.E. According to Perkins, the Court set a deadline of March 9, 2009 for Plaintiffs to serve expert reports and accompanying expert disclosures and "Plaintiffs never served an expert report or disclosures in support of their Eighth Claim against Perkins." Def.'s Mem. at 1. Perkins draws the Court's attention to Perkins' Statement of Undisputed Facts pursuant to Local Civil Rule 56.1, in which Perkins asserts that Plaintiffs admitted the same. *Id*. The applicable portion of the Rule 56.1 Statement reads as follows:

> 45. <u>Perkins' Statement No. 45</u>
>
> Plaintiffs have not submitted an expert report in support of their Eighth Claim as against PEA in this matter.

Response to Perkins Statement No. 45:

The Sureties admit Perkins' statement No. 45 and further aver that no expert testimony is required to establish Plaintiffs' Eighth Claim. To the extent that expert proof is required regarding Perkins' conduct, the Sureties' have retained two experts in this matter, Donald E. Lefler, P.E. and Ivan Pollack, P.E., and both have prepared expert reports.

According to Perkins, it would have stopped at this admission, except for certain statements contained in Plaintiffs' opposition to Perkins' motion for reconsideration. Perkins claims that the expert reports served by Plaintiffs were not addressed to Plaintiffs' claim for breach of contract as against Perkins (referred to as the "Eighth Claim"). Def.'s Mem. at 3.

According to Perkins, the Lefler Report was served to support Plaintiffs' claims and defenses regarding scheduling issues - - issues which, according to Perkins, have nothing to do with Plaintiffs' Eighth Claim. Moreover, Perkins argues that Lefler's report does not contain a single opinion as to whether Perkins properly performed its construction administration duties prior to the Takeover Agreement, which Perkins' contends is the sole basis for Plaintiffs' Eighth Claim. *Id*. at 4. As to the Pollack report, Perkins maintains the same principle applies because Pollack restricted his report to his analysis of "HVAC and Porte Cochere outdoor Sprinkler Systems." *Id*.; Ex. C at 4.

Initially, the Court notes that it does not read the the Sureties' Rule 56.1 Response to say that they did not plan on offering any expert testimony whatsoever. Rather, the Court understands Plaintiffs' response to state its position that no expert testimony is *required* to demonstrate the requisite elements of Plaintiff's Eighth Claim for breach of contract. Plaintiffs' response further provides that Plaintiffs have retained two experts who may opine on Perkins' conduct -- "[t]o the extent expert proof is required" regarding such issue.

9

Admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Moreover, Rule 26 of the Federal Rules of Civil Procedure sets forth the requirements of the written report which must be submitted by an expert. Under this rule, the expert report must contain the following:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii) the data or other information considered by the witness in forming them;
>
> (iii) any exhibits that will be used to summarize or support them;
>
> (iv) the witness's qualifications, including a list of all publications authored in the previous ten years;
>
> (v) a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition; and
>
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2).

"Under Rule 37, a court may refuse to allow testimony on a matter that a party failed to include in an expert report 'unless the failure was substantially justified or is harmless.'" *In re MTBE Prods. Liab. Litig. (New York v. Exxon Mobil Corp.)*, 643 F. Supp. 2d 471, 477 (S.D.N.Y.

2009) (quoting Fed. R. Civ. P. 37(c)(1)). "Although complete disclosure is strongly encouraged, the court retains broad discretion to determine whether a report is substantially complete, whether the opposing party was harmed by an omission, and whether any sanction is warranted." *Id.* (citing *Hein v. Cuprum, S.A. de C.V.*, 53 Fed. Appx. 134, 136 (2d Cir. 2002); *Lorme v. Delta Airlines*, 251 Fed. Appx. 691, 692 (2d Cir. 2007) ("the premise . . . that the preclusion sanction under Rule 37 is nearly automatic, is not correct")). Moreover, "precluding [expert] testimony . . . under [Rule 37] is a drastic remedy and should only be applied in cases where the party's conduct represents flagrant bad faith and callous disregard of the federal rules." *Lorme v. Delta Air Lines, Inc.*, No. 03 Civ. 5239, 2005 WL 1653871, at *4 (S.D.N.Y. Jul. 13, 2005) (citations omitted).

The purpose of providing an expert report during the discovery phases of a case is to eliminate "unfair surprise to the opposing party." *In re MTBE Prods. Liab. Litig.*, 643 F. Supp. 2d at 482 (citation omitted). "[T]he test of a report is whether it was sufficiently complete, detailed and in compliance with the Rules so that surprise is eliminated, unnecessary depositions are avoided, and costs are reduced." *Id.* (citing, *inter alia*, *Lorme*, 2005 WL 1653871, at *3). "Ideally, an expert report would contain every fact, conclusion, and detail of the planned testimony." *In re MTBE Prods. Liab. Litig.*, 643 F. Supp. 2d at 482. However, Rule 26(a)(2)(B) "does not limit an expert's testimony simply to reading his report. . . . The rule contemplates that the expert will supplement, elaborate upon, explain and subject himself to cross-examination upon his report." *Id.* (citation omitted). Thus, the relevant inquiry is whether the Lefler and Pollack reports were "substantially complete."

It is true, as Perkins notes, that the Sureties' expert Lefler stated he was retained "to prepare this expert report and to provide expert testimony regarding certain scheduling matters at issue in this action concerning the construction of the Payton Lane Nursing Home." While the Sureties' expert reports here are not perfect, they cannot be deemed to be "substantially incomplete" because Plaintiffs did not specifically identify each claim or issue in support of which the experts would testify. Rule 26(a)(2) does not require such particular designations.

Moreover, the Sureties point out that the Lefler report "refers at least six times to the significant inaccuracies in the Perkins-certified Requisition #22R (including a chart illustrating the status as of 22R), as well as offering numerous opinions regarding the quality, or lack thereof, of Perkins' work." The Sureties then quote six paragraphs from the Lefler report that pertain to Perkins' work. *See* DE 238 at 5-6. This information was also set forth in Plaintiffs' opposition to Payton Lane's summary judgment motion, filed on July 15, 2009. *See* DE 186 at 14-15. The Sureties further argue that the Pollack report is "directed to the deficiencies in Perkins' performance." DE 238 at 7. Likewise, in their summary judgment opposition papers, the Sureties included excerpts from the Pollack report wherein Pollack found "fault with the work of Perkins regarding the design and implementation of the HVAC and Porte Cochere sprinkler system . . . ." DE 186 at 15. Thus, as early as July 2009 Perkins was on notice that the Sureties intended to use their experts to address Perkins' work.

Furthermore, in emails exchanged between counsel for the Sureties and Perkins on April 27 and 28, 2009, regarding the scheduling of Lefler's deposition, the Sureties advised Perkins that Lefler "opines that there were significant inaccuracies contained in Application for Payment #22R certified by Perkins." DE 238 at 7 and Ex. 2. Perkins, however, took the position

12

that Lefler was "only being offered as an expert witness on the scheduling/liquidated damages/wrongful termination claims and has not opined as to the adequacy of Perkins Eastman's review and certification of payment applications." On that basis, Perkins opted not to depose Lefler. *Id.* Counsel for the Sureties responded that "we disagree with your characterization." *Id.*

Rule 26 prevents one party from "sandbagging" an opposing party with new evidence. *See Ebewo v. Martinez*, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004). Here, Perkins was on notice at least since April 2009 of the prospect that Plaintiffs' experts would testify as to Perkins' performance. For whatever reason, Perkins opted not to depose Lefler and Pollack. The Court notes that such depositions would have been a more appropriate time to address the purportedly deficient reports. *See Lorme*, 2005 WL 1653871, at *4 (denying motion to preclude expert testimony and noting that the moving party failed to depose the expert prior to trial). Moreover, if necessary, Perkins will have ample opportunity at trial to cross-examine the Sureties' experts. *See id*. Thus, Plaintiffs' conduct with regard to its expert disclosures "hardly rises to the level of unacceptable sandbagging." *In re MTBE Prods. Liab. Litig.*, 643 F. Supp. 2d at 482; *see also Lorme*, 2005 WL 1653871, at *4 (in light of "the combined completeness of [the expert's] Report and the Joint Pre-Trial Order, there was no element of surprise in [the expert's] testimony"). Additionally, there is no evidence of bad faith or "callous disregard" for the federal rules by Plaintiffs. *See Lorme*, 2005 WL 1653871, at *4.

In light of my findings, including that (1) Plaintiffs' expert disclosures and reports complied with Rule 26(a)(2), (2) Perkins had ample notice of the experts' identities and the contents of their reports, and (3) Perkins had the opportunity to depose Lefler and Pollack but

13

chose not to, there is no basis to preclude the Sureties' experts from testifying as to Perkins' conduct in connection with the Eighth Claim. Accordingly, Perkins' motion is DENIED.

### III. Perkins' Motion To Preclude Any Custom And Practice Evidence

Perkins moves, *in limine*, to preclude the Sureties from offering "any testimony or evidence" as to (1) industry custom and practice regarding "an architect's review, approval and certification of payment requisitions, and whether Perkins' performance deviated from said custom and practice[,]" and (2) the percentage of the work complete. *See* DE 227 at 3 (emphasis in original). Perkins argues that expert testimony is "necessary for the introduction of custom and practice evidence[,]" as well as for "the technical nature of what percentage of the work for the varying line items was complete and how said percentages were derived." *Id*. at 3-4 (citations omitted).

The Court understands Perkins' argument here to be twofold. First, Perkins asserts that the Sureties should be precluded from proffering a lay witness to testify as to industry custom and practice and the percentage of complete work. This issue was discussed at length in Section I, *supra*, and need not be addressed further here. With regard to the portion of Perkins' argument pertaining to lay witnesses, I adhere to the rulings set forth in Section I granting, in part, and denying, in part, that motion.

In the second part of its motion, Perkins maintains that the Sureties "have not designated an expert witness in support of [their] Eighth Claim" and, according to Perkins, they should not be permitted to offer any such evidence at trial. DE 227 at 4. In Section II, *supra*, I discussed the requirements of Rule 26(a)(2), which governs expert reports, and Rule 37, which governs preclusion of expert testimony. As previously noted, Courts in the Second Circuit "recognize

14

that preclusion of evidence pursuant to Rule 37(c)(1) is a drastic remedy and should be exercised with discretion and caution." *Ebewo*, 309 F. Supp. 2d at 607 (citations omitted). As further discussed above, Perkins has long been on notice of the Sureties' intention to proffer their experts in support of their arguments regarding Perkins' work on the Project. Perkins cannot now claim prejudice as a result of its failure to depose the experts and, in any event, any purported prejudice can be cured through cross-examination at trial. *See Lorme*, 2005 WL 1653871, at *4 (denying motion to preclude expert testimony under Rule 37 and noting that the moving party "had the ability to cure any alleged prejudice since plaintiff was given ample opportunity to cross-examine [the expert], and could have deposed him prior to trial but chose not to do so").

Furthermore, in considering a motion *in limine*, the court "may reserve judgment until trial, so that the motion is placed in the appropriate factual context." *In re MTBE Prods. Liab. Litig.*, 643 F. Supp. 2d at 476 (quoting *United States v. Chan*, 184 F. Supp. 2d 337, 340 (S.D.N.Y. 2002)). This is particularly so because "a court's ruling regarding a motion *in limine* 'is subject to change when the case unfolds. . . . Indeed even if nothing unexpected happens at trial, the district judge is free -- in the exercise of sound judicial discretion -- to alter a previous in limine ruling.'" *In re MTBE Prods. Liab. Litig.*, 643 F. Supp. 2d at 476 (quoting *Palmieri v. Defaria*, 88 F.3d 136, 139 (2d Cir. 1996) (quoting *Luce v. United States*, 469 U.S. 38, 41-42, (1984))).

Based on the circumstances presented here, and for the reasons set forth in Section II, *supra*, at this point there is no basis to preclude the Sureties' experts from testifying in the manner requested by Perkins. In the event a dispute arises during trial as to the scope of an

expert's testimony, I will consider such issues in light of the factual context in which the testimony is presented. Accordingly, Perkins third motion *in limine* is GRANTED, in part, with regard to lay witness testimony, and is otherwise DENIED.

**SO ORDERED.**

Dated: Central Islip, New York
February 23, 2010

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge